1   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    BRADFORD K. NEWMAN (SB# 178902) bradfordnewman@paulhastings.com
2   STEPHEN N. YANG (SB# 142474) stephenyang@paulhastings.com
    SARJU A. NARAN (SB# 215410) sarjunaran@paulhastings.com
3   SHANNON S. SEVEY (SB# 229319) shannonsevey@paulhastings.com
    1117 S. California Avenue
4   Palo Alto, CA 94304-1106
    Telephone: (650) 320-1800
5   Facsimile: (650) 320-1900

6   Attorneys for Plaintiffs
    Arthur J. Gallagher & Co., Inc. & Arthur J. Gallagher & Co., Insurance Brokers of California, Inc.
7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11                          SAN FRANCISCO DIVISION

12  ARTHUR J. GALLAGHER & CO., Inc., a        CASE NO.
    Delaware Corporation, ARTHUR J.
13  GALLAGHER & CO., INSURANCE              **DECLARATION OF WARREN G. KRUSE**
    BROKERS OF CALIFORNIA, INC., a          **II IN SUPPORT OF PLAINTIFF ARTHUR**
14  California Corporation,                  **J. GALLAGHER & CO., INC.'S EX PARTE**
                                             **MOTION FOR TEMPORARY**
15                Plaintiffs,                **RESTRAINING ORDER, EVIDENCE**
                                             **PRESERVATION ORDER, EXPEDITED**
16         vs.                               **DISCOVERY ORDER, AND ORDER TO**
                                             **SHOW CAUSE RE ISSUANCE OF**
17  EDGEWOOD PARTNERS INSURANCE             **PRELIMINARY INJUNCTION**
    CENTER, a California corporation; DAN
18  R. FRANCIS; JOHN G. HAHN;
    ANDREW ("WALLY") BROWN, JR.;
19  BRIAN F. QUINN; NEIL, R. COHN;
    CAROLANN COHN; MICHAEL J.
20  BROWN; STEPHEN HAUSE; LAURA J.
    WICK; JAMES C. HALBLEIB;
21  LAURINDA ("LAURIE") A. MARTIN;
    ERIC CHUA; GEORGE J. PETTY;
22  LINDA SOO HOO; ROBERT E. DUTTO;
    SUSAN M. ENGLISH; DON J.
23  JOHNSON; ALLEN L. AMOS;
    WILLIAM ("BILL") PHILLIPS, JR.;
24  DIRCK ("RICK") R. STINSON; ROBERT
    ("BOB") D. ELLSWORTH; ROBERT H.
25  WATKINS; PAUL H. WAGENER;           **REDACTED**
    SHANDRANETTE MIDDLETON,
26
                  Defendants.
27

28
    Case No.                              DECLARATION OF WARREN G. KRUSE II

I, Warren G. Kruse II, hereby declare and certify as follows:

1.    I am currently employed as the Vice President of Data Forensics and Analytics with Encore Legal Solutions ("Encore"), a national provider of electronic discovery and related services with over 12 years experience and more than 400 members in offices across the U.S. I am in charge of the Encore business unit that assists law firms and corporate legal departments with preservation of evidence, computer forensics, incident response, cybercrime prevention, and data collection.

**Background**

2.    I am a Certified Information Systems Security Professional ("CISSP") and Certified Forensic Computer Examiner ("CFCE").

3.    I have extensive experience in computer forensic cases, having conducted computer forensics globally in numerous cases, from civil disputes to criminal prosecutions at the federal level.

4.    I am a member of the New York and European Electronic Crimes Task Forces of the U.S. Secret Service.

5.    I have served as a computer expert for cases in U.S. District Court, New York Superior Court, and the American Arbitration Association, as well as for various publications and television.

6.    I have provided forensics on proprietary systems for cases lead by the Federal Bureau of Investigations ("FBI"), including intrusion of Microsoft.

7.    I conducted the forensics on the "ComTriad" case which lead to three individuals being charged with theft of intellectual property and theft of trade secrets, both proprietary software and hardware.

8.    I am a member of numerous other government-sponsored initiatives, and a board member of the National Center for Forensic Science's Digital Evidence Certification Committee, and a certification board member of the U.S. Association of Professional Investigators.

Case No.                                       2              DECLARATION OF WARREN G. KRUSE II

1      9.    I am also the co-author of the publication, "Computer Forensics: Incident

2  Response Essentials," and the technical editor of a new book titled "Computer Forensic

3  Jumpstart."

4      10.    Attached hereto as Exhibit A is a true and correct copy of my curriculum

5  vitae.

6  **Work Performed For A.J. Gallagher**

7      11.    On December 14th, 2007, I was retained by Arthur J. Gallagher & Co. to

8  conduct a forensic analysis of nine hard drives which had been forensically imaged using

9  Encase software (the "Hard Drives"). It was represented to me that the Hard Drives

10  belonged to the following former Gallagher employees: Neil Cohn, Carol Cohn, Michael

11  Brown, Linda Cardinha, Laura Wick, Don Johnson, Brian Quinn, Steve Hause and Wally

12  Brown. It was further represented to me that another forensic expert not employed by

13  Encore had created the Encase images of the Hard Drives in question.

14      12.    I received the Encased versions of the Hard Drives on a Western Digital,

15  500 Gigabyte hard drive, model number WD5000H1U-00, serial number

16  WMASU0339983.

17      13.    EnCase is a standard, commercially available software program that is

18  specifically designed as a tool for computer forensic investigations. It is a fully integrated

19  tool, meaning it performs all essential functions of a computer forensic investigation,

20  including the imaging of a target drive, the generation of an MD5 hash value of the

21  evidentiary forensic image, and facilitates much of the analysis of the subject evidence.

22  The software allows for a completely non-invasive investigation in order to view all

23  information on a computer drive, whether it is in the form of a deleted file, a non-deleted

24  file, file fragments, and even temporary buffer files. EnCase is widely used in the

25  computer forensics industry and, in my experience, it is the tool of choice of the majority

26  of computer forensic investigators in law enforcement. It is the primary computer

27  forensic tool used by several federal agencies, including the U.S. Customs agency and the

28  United States Secret Service.

1    14.    Upon receiving the Hard Drives, I examined the contents thereof.

2    Specifically:

3                a.    Registry; and

4                b.    Documents created, modified, deleted or accessed at dates and times

5                          in the month of December 2007.

6    15.    As part of the date and time analysis described above, I reviewed the "link

7    files" created on the Hard Drive I am informed used to belong to Neil Cohn, from

8    December 3, 2007 through the end of Cohn's employment with A.J. Gallagher. Link files

9    are "shortcuts" created by the Windows operating system whenever a file is accessed, and

10   they identify the location of the file that was accessed. As with other files, when a link

11   file is created, an auto-generated "last access date/time" is created. Link files are valuable

12   sources of information about the files to which they relate. For instance, they can identify

13   when a user has accessed files, and in this case Neil Cohn rapidly accessed files from a

14   network server. They can further assist an examiner to draw a direct connection from files

15   found on external storage media to link files found on a computer.

16   **Findings**

17   16.    As of this date, my preliminary forensic analysis of the Hard Drives has

18   resulted in the following findings:

19                **Neil Cohn:** I have been asked to assume as true that Defendant Neil Cohn

20                resigned from his employment on the morning of December 7, 2007, and

21                exited A.J. Gallagher's premises that day prior to 1:00 p.m.

22                (a)    **External Storage Devices:** (1) On December 5, 2007, at

23   approximately 6:12 p.m., a Geek Squad USB drive was attached to Cohn's Hard Drive;

24   (2) on December 6, 2007, at approximately 6:02 a.m., multiple Removable Disks were

25   accessed from Cohn's Hard Drive; (3) on December 6, 2007, at approximately 10:53 p.m.,

26   a Removable Disk was accessed from Cohn's Hard Drive; and (4) on December 7, 2007,

27   at approximately **12:57 a.m.**, a Removable Disk was accessed from Cohn's Hard Drive.

28

Case No.                                    4                    DECLARATION OF WARREN G. KRUSE II

1       (b)    **Rapid Access of Files**: My forensic analysis of Cohn's Hard Drive

2    also revealed rapid and mass accessing of files on December 6, 2007 (a true and correct

3    copy of the listing of these files is attached hereto as Exhibit B), including:

4        (i)    228 files/folders accessed **early morning** on December

5    6, 2007:  Between 6:01:03 a.m. and 6:02:05 a.m. (1 minute 2 seconds), the user accessed

6    approximately **228 files/folders within 1 minute 2 seconds**—208 accessed from A.J.

7    Gallagher's network server, and 20 accessed from within the Hard Drive. During the

8    same 1 minute 2 seconds timeframe, the user accessed **3 external drives** as well as his

9    CD-ROM drive, which access is consistent with **copying files to external media and**

10    **burning files to a CD**—those devices consisted of an external USB drive (registered as

11    the E: drive) accessed at 6:01:28 a.m. and 6:02:04 a.m.; an external USB drive (registered

12    as the F: drive) accessed at 6:01:44 a.m., 6:01:55 a.m., 6:02:01 a.m., and 6:02:04 a.m.; an

13    external USB drive (registered as the G: drive) accessed at 6:01:55a.m.; and a CD-ROM

14    drive (registered as the D: drive) accessed at 6:01:37 a.m. Among the 228 files and

15    folders accessed that morning, the user accessed

16                 true and correct

17    copies of which files are attached hereto as Exhibits C and D, respectively.

18        (ii)    17 files accessed on the **evening** of December 6, 2007:

19    From 4:44:30 p.m. to 5:08:31 p.m., the user accessed 5 files from A.J. Gallagher's

20    network server. At 6:01:17 p.m., the user accessed 3 files **within the same second** from

21    within the Hard Drive and from A.J. Gallagher's network server. 45 seconds later, at

22    6:02:02 p.m., the **user accessed an external USB drive** (G: drive), and 45 minutes after

23    doing so, from 6:52 p.m. until 8:06 p.m., accessed 9 more files from within the Hard

24    Drive and from A.J. Gallagher's network server. Among the 17 files accessed that

25    evening, the user accessed,

26        a true and correct copy of which is attached hereto as Exhibit E.

27

28

1                  (iii)       <u>29 files and folders accessed **late night** on December 6,</u>

2 <u>2007</u>: From 10:08 p.m. until 10:52 p.m., the **user accessed an external USB drive** (G:

3 drive) again. 10 minutes after doing so, at 11:02 p.m., the user began accessing 27 files

4 and folders from A.J. Gallagher's network server and the Hard Drive for the next

5 approximate one and one-half hours, **until 12:37am**. 20 minutes thereafter, **at 12:57:03**

6 **a.m.**, the user accessed the external USB drive (G: drive) once again, followed

7 immediately by access of 2 more files from A.J. Gallagher's server within 13 seconds,

8 from 12:57:10 a.m. until 12:57:23 a.m. Among the 29 files and folders accessed that

9 night, the user accessed the following:

10

11                                                            True and

12 correct copies of these files are attached hereto as Exhibits F, G, and H, respectively.

13                 (c)       **Defragmentation of Hard Drive:** The following programs

14 associated with the Windows Defragmentation program were accessed on Cohn's Hard

15 Drive:

                    (i)       Name DEFRAG.EXE-273F131E.pf

16

17                              Last Accessed 12/07/07 05:54:49PM

18                              File Created 10/07/07 07:17:10PM

19                              Full Path: Neil Cohn\C\WINDOWS\Prefetch\

20                              DEFRAG.EXE-273F131E.pf

21                     (ii)      Name defrag.exe

22

23                              Last Accessed 12/07/07 05:54:39PM

24                              File Created 08/04/04 05:00:00AM

25                              Full Path: Neil Cohn\C\WINDOWS\system32\

26                              defrag.exe

27     17.     Defragmentation is run to reduce the amount of fragmentation in file

28 systems. Programs, like the above, do this by physically reorganizing the contents of the

1    disk to store the pieces of each file contiguously. In doing so, deleted files and areas of

2    the hard drive that contained data from previous files may be over written. Typically,

3    through the normal use of a computer, many files are deleted, both from users discarding

4    files, and from operating systems discarding files.

5         18.    During the course of my analysis, I have spoken to Todd Kimble, Chief

6    Information Officer of A.J. Gallagher Inc., and he advised me that the IT department

7    would not have routinely defragmented hard drives and that, in fact, the local IT person in

8    Gallagher's San Ramon office, George Petty, was told to preserve the Hard Drives of the

9    people listed above before their Hard Drives were imaged.

10        19.    In checking the defragmentation state of Cohn's imaged Hard Drive, I found

11    that the total fragmentation was only 15%, and the free space fragmentation was 0 %. In

12    my experience, fragmentation rates are higher than 15% of the drive. The fragmentation

13    percentage of Cohn's Hard Drive is consistent with the recent access of the

14    defragmentation program, which appears to have been run at 5:54 p.m. on December 7,

15    2007, as indicated by the access of "DEFRAG.EXE-273F131E.pf" and "defrag.exe"

16    discussed above.

17    **Conclusions and Files Were Accessed For Purposes Of Copying**

18        20.    I have evaluated my findings against Neil Cohn's December 7, 2007

19    resignation letter to A.J. Gallagher, wherein he describes certain data removal from his

20    Hard Drive prior to his departure, which is further confirmed by George Petty. A true and

21    correct copy of the resignation letter I reviewed is attached hereto as Exhibit I. The

22    activity Mr. Cohn describes in his letter, which he purports to have undertaken to remove

23    uncertainty regarding his non-retention "of any confidential or proprietary information of

24    Gallagher," is wholly inconsistent with my findings.

25        21.    Specifically, Mr. Cohn's purported removal of business contacts from the

26    ACT! Contact Management Program he claims to have used as his "Desktop Calendar,"

27    and the synchronization of his personal Blackberry PDA with the ACT! Contact

28    Management Program to remove all A.J. Gallagher clients and prospective clients from

1  his Blackberry, is not consistent with the forensic data I retrieved from the Hard Drive

2  with respect to the file access and use of external storage media on December 6, 2007, and

3  the defragmentation of his Hard Drive following that activity, on December 7, 2007. The

4  resignation letter describes the ACT! Program and the sync of the Blackberry. Neither

5  would have accessed the 274 files and folders on December 6, 2007 described above. If

6  Mr. Cohn was removing data on December 7, 2007, then there would not need to be so

7  much access on December 6, 2007 to server files. It is my conclusion that the files were

8  accessed for the purpose of copying onto external storage media.

9      22.    The rapid access to files was found from the discovery of link files. As

10  described above, link files are shortcuts or "links" to the original accessed file; in this case

11  most of the original files were located on a network file server. Link files are normally

12  created by the operating system when something (i.e., a file) is accessed. The link files at

13  issue were located in Cohn's "Recent" folder. The "Recent" folder on Windows XP

14  displays a list of files and documents that a user has most recently used. The majority of

15  the files were on a file server on A.J. Gallagher's network. For a user to manually access

16  so many files in so short a time (e.g., 228 files/folders in 1 minute and 2 seconds), and

17  across a network to a file server, is not practical. Ordinarily, legitimate file use involves a

18  user locating a file, opening the file, waiting for the associated program and file to open,

19  and then repeating that process for any additional files. It is not reasonable to believe this

20  was done for the approximately 228 files and folders accessed in the span of just over 1

21  minute. Rather, the rapid access would most likely have been during a wholesale print or

22  copy process. Since none of these accessed files were on Cohn's local computer, it is my

23  belief that the rapid access of files and access to removable media was the result of files

24  being copied to the removable media, and most likely being removed from the premises.

25      23.    As of this date, my preliminary examination of Neil Cohn's Hard Drive is

26  complete and I am currently waiting for information to complete my analysis of the other

27  Hard Drives listed above.

28

1    I declare under penalty of perjury according to the laws of the United States of America

2    that the foregoing is true and correct. Executed this 18th day of December 2007, at 9:30 PM,

3    New Jersey

4

5                                    Warren G. Kruse II

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.                              9         DECLARATION OF WARREN G. KRUSE II