PAUL, HASTINGS, JANOFSKY & WALKER LLP
BRADFORD K. NEWMAN (SB# 178902) bradfordnewman@paulhastings.com
STEPHEN N. YANG (SB# 142474) stephenyang@paulhastings.com
SARJU A. NARAN (SB# 215410) sarjunaran@paulhastings.com
SHANNON S. SEVEY (SB# 229319) shannonsevey@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Attorneys for Plaintiffs
Arthur J. Gallagher & Co., Inc. & Arthur J. Gallagher & Co., Insurance Brokers of California, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., Inc., a Delaware Corporation, ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC., a California Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; DAN R. FRANCIS; JOHN G. HAHN; ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; NEIL, R. COHN; CAROLANN COHN; MICHAEL J. BROWN; STEPHEN HAUSE; LAURA J. WICK; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; SHANDRANETTE MIDDLETON,<br><br>Defendants. | CASE NO.<br><br>**DECLARATION OF JON A. BERRYHILL IN SUPPORT OF PLAINTIFF ARTHUR J. GALLAGHER & CO., INC.'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, EVIDENCE PRESERVATION ORDER, EXPEDITED DISCOVERY ORDER, AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION**<br><br>**REDACTED** |

Case No.                                                                DECLARATION OF JON A. BERRYHILL

I, Jon A. Berryhill, declare:

1. I am and was at all times mentioned herein a computer forensic analyst and a principal of Berryhill Computer Forensics, Inc., a firm which specializes in the collection, preservation, analysis and presentation of computer-related evidence, including computer hard drives. Our methods are court-proven. I have testified in 29 criminal and civil cases as an expert in computer forensic analysis and to my knowledge, no court has ever faulted the EnCase software and forensic methodology I use. My methodology ensures the integrity of the evidence and the chain of custody. Prior to working for Berryhill Computer Forensics, Inc, I was an officer in the United States Air Force serving as a Special Agent with the United States Air Force Office of Special Investigations. In this position, I specialized in computer related crimes and counter intelligence. The facts set forth in this declaration are based on my personal knowledge and if called as a witness I could and would testify thereto.

2. I have worked in the field of computer forensics since 1993. I have a Bachelor of Science in Computer Science and have received and provided extensive training in computer forensics tools (both software and hardware) and analysis. From 1998 to 2000, I helped to develop and teach POST certified courses to law enforcement personnel at the California Department of Justice Advanced Training Center on the subject of Internet investigations and high tech crime investigations. Attached hereto as Exhibit A is a true and correct copy of my resume.

3. The methods I use to copy the contents of a computer (hereafter "hard drive") ensures the integrity of all existing data contained therein and does not modify in any way the existing data contained on the hard drive. Using a software program called EnCase, I create an image file (often referred to as a mirror image) of the evidence hard drive(s) as follows: (1) the hard drive is attached to an analysis computer via a hardware write blocking device which ensures the data on the subject computer is not changed; (2) I create a complete forensic image copy or "exact snapshot" of a targeted piece of computer media, such as a hard drive. This forensic image is a complete sector-by-sector copy of all data contained on the target media and thus all information, including available information from deleted files, is included in the forensic image

created. Analysis can be performed on the image file directly or the image can be used to create a duplicate hard drive which can be further analyzed. The image file and the original evidence hard drive remain completely unaltered from the time I acquire it. An additional method sometimes used to create forensic quality image copies of hard drives is the use of a dedicated hardware device specifically designed for the forensic task. It creates an EnCase compatible raw image file that is functionally equivalent to the EnCase acquisition process. The device I use for this task is the Voom HardCopy 2.

4. EnCase is a standard, commercially available software program that is specifically designed as a tool for computer forensic investigations. It is a fully integrated tool, meaning it performs all essential functions of a computer forensic investigation, including the imaging of a target drive, the generation of an MD5 hash value of the evidentiary forensic image, and facilitates much of the analysis of the subject evidence. The software allows for a completely non-invasive investigation in order to view all information on a computer drive, whether it is in the form of a deleted file, a non-deleted file, file fragments, and even temporary buffer files. EnCase is widely used in the computer forensics industry and, in my experience, it is the tool of choice of the majority of computer forensic investigators in law enforcement. It is the primary computer forensic tool used by several federal agencies, including the U.S. Customs agency and the United States Secret Service.

5. On December 12, 2007, I was engaged by Arthur J. Gallagher & Co. to perform a computer forensics analysis of specific computers identified and represented to me as the computers used by a group of former employees who had recently resigned to accept employment with a competitor called EPIC.

6. The ongoing analysis of the computers has resulted in a number of findings which I believe pertain to this investigation. A note about the dates discussed herein pertaining to registry entries for USB storage devices: In all cases, the date and time identified is a date and time certain when the USB storage device is known to have been in use. Because of the way Windows operates, however, it is unknown if this was most the recent date and time it was used.

On the other hand, when a date and time is described herein as being <u>the first time</u> that a device was attached to a particular computer, that information is precise and correct.

      (a)    I have been asked to assume as true that George Petty resigned from his employment with A.J. Gallagher without notice effective December 11, 2007. The laptop computer assigned to George Petty, designated item number 528-03, shows an interesting set of facts. The computer contains a 120GB hard drive, only 7.2GB of which was in use at the time of his departure. A substantial number of files have been deleted from this computer (many of which are recoverable). On December 11, 2007, the two named user profiles for the computer, "gjpetty" and "a-gjpetty," were deleted along with all the files in those user profiles' directory structures. To demonstrate the volume of data deleted, a true and correct copy of the listing of the contents of the deleted structure under the profile "gjpetty," is attached hereto as Exhibit B, and is entitled "528-03 file list 01.xls." On December 11, 2007, at 9:12 am, a new user profile was created with the name "GJPetty." This profile is essentially blank, containing only the default contents of all user profiles. Backing up to the day before the new user profile was created, on December 10, 2007, at 4:47 pm, a **Western Digital 160GB** USB hard drive was attached to the computer. Then, on December 11, 2007, at 7:16 am (**less than 2 hours before the new user profile was created**), a **Western Digital 250GB** USB hard drive was attached to the computer. It is unknown what data may have been transferred to or from these two external hard drives. Backing up even further, on December 5, 2007, the CD Burning software program, "Nero8," was installed on the computer. I have seen a sales receipt generated on December 6, 2007 for the purchase of this software, which I am informed George Petty submitted to A.J. Gallagher for reimbursement.

      (b)    The desktop computer assigned to George Petty, designated item number 528-04, contains two hard drives. They have been labeled 528-04T and 528-04B for purposes of this investigation. The -04B drive is a 40GB hard drive and is the drive that contains the operating system (i.e., Windows). The -04T drive is a 250GB hard drive. An analysis of the Windows registry for the computer shows that in addition to a USB thumb drive, a **Western Digital 160GB** external USB hard drive and a **Western Digital 250GB** external USB hard drive

3      DECLARATION OF JON A. BERRYHILL

had been connected to the computer (the **same manufacturer and storage capacities** as the external drives connected to Petty's laptop on December 10, 2007 and December 11, 2007—presumably the same drives). The 250GB external hard drive was first attached to the computer on December 11, 2007, at 6:43 am (approximately **30 minutes** before an external drive of the same capacity and manufacturer was attached to Petty's laptop). The 160GB external hard drive was first attached to the computer on November 26, 2007. A printed directory listing of this hard drive (528-04T) would contain more than 575,000 lines (which exceeds the size limit of Excel and other spread sheets). However, the file listing has been imported into a MS Access database and made available to the client for review.

(c)  I have been asked to assume as true that Shandranette Middleton resigned from her employment with A.J. Gallagher without notice effective December 11, 2007. The computer assigned to Shandranette Middleton, designated item number 528-17, shows that a Lexar thumb drive was attached to the computer for the first time on December 7, 2007, at 7:14 am. An examination of the network user space assigned to this user shows that on that date, in the **46 minutes** between 7:21 am and 8:07 am, **252 user-created files** were accessed. Such a large number of files accessed in such a short time is suggestive of a copy process. A true and correct copy of the listing of these files, entitled "528-17 file list 01.doc," is attached hereto as Exhibit C.

(d)  I have been asked to assume as true that Eric Chua resigned from his employment with A.J. Gallagher without notice effective December 10, 2007. The computer assigned to Eric Chua, designated item number 528-13, shows that on December 3, 2007, at 8:56 am, a Lexar JumpDrive was used. An examination of the user's local drive as well as the user's assigned network storage space shows a number of small groups of files being accessed in a manner that is indicative of mass copying, including rapid access on December 10, 2007 (Chua's last day of employment), of **9 files in less than 8 minutes**, between 7:01:52 am and 7:09:07 am. A true and correct copy of the list of files accessed on December 10, 2007, entitled "528-10 file list 01.doc," is attached hereto as Exhibit D.

4     DECLARATION OF JON A. BERRYHILL

1    (e)    I have been asked to assume as true that Jim Halbleib resigned from his employment with A.J. Gallagher without notice effective November 20, 2007. The computer assigned to Jim Halbleib, designated item number 528-40, was examined. There is evidence that shows a SanDisk Cruzer U3 Micro thumb drive has been used on this machine at least as recently as November 9, 2007. Analysis of the user's "*Recent*" folder, stored on the local drive, shows access to **222 user-created files** on November 12, 2007, at 2:24 pm. A true and correct copy of the listing of these files, entitled "528-40 Halbleib link files.doc," is attached hereto as Exhibit E. The files accessed are/were actually saved on a different server (named SFOFS1) than the server examined with respect to the other users' file access. That server has not yet been examined.

(f)    I have been asked to assume as true that Laurie Martin resigned from her employment with A.J. Gallagher without notice effective November 26, 2007. Examination of the computer assigned to Laurie Martin, designated item number 528-39, reveals several groups of rapid file access activity between November 1, 2007 and November 20, 2007, including but not limited to, **97 files within 1 minute** (at 9:00 pm) on November 13, 2007, **130 files within 1 minute** (at 4:20 pm) on November 13, 2007, **46 files within 1 minute** (at 9:16 am) on November 14, 2007, and **149 files within 1 minute** (at 5:13 pm) on November 20, 2007. A true and correct copy of the listing of these files, entitled "528-39 Martin link files.doc," is attached hereto as Exhibit F.

7.    As noted above, based on my examination of the data acquired from the hard drives referenced above, and based on: (i) my 14 years of experience in the computer forensics industry and my work on over 500 cases in the private sector, many involving theft of trade secrets; (ii) the usage patterns reflected in the file lists; and (iii) the number of files accessed during relatively short time intervals, I have concluded that it is likely that the above activity resulted from one or more persons copying files from hard drives and A.J. Gallagher's server onto some other electronic media. I base this conclusion primarily on the fact that the lists show short intervals of very focused activity accessing these files. Moreover, it is not possible for someone to perform substantive work on these files in the short time intervals reflected in these lists

5    DECLARATION OF JON A. BERRYHILL

1   8.   Because it is relatively easy to permanently delete a document from a hard drive or thumb drive, in cases where there is some reason to be concerned that the subjects of the investigation may delete all or some of the computer files that contain evidence of wrongdoing, in my professional opinion, it is important to gain early and immediate discovery into all computers and electronic storage devices that the subject currently has access to so as to take reasonable measures to prevent permanent destruction of evidence.

9.   Given the facts and allegations described to me in this case, and based on my own forensic review of the evidence residing on the computers which I inspected, it is my opinion that there is a reasonable possibility that valuable information may be obtained from the examination of the hard drives, thumb drives, current work computers at EPIC, EPIC's servers reflecting all emails sent and received by the users in question during the short period they have been employed by EPIC, any files saved to the EPIC server by the users in question, and any other computer or electronic storage devices the users identified above accessed while using the computers, or currently have access to, including but not limited to any home computers or any other computers which have been connected to any Gallagher computer systems or that contain Gallagher work product. This would include both personally owned computers and computers assigned to the users by their current employer.

10.   Concerns over the protection of the privacy of the computer owner are easily addressed. I have been retained in a number of cases of civil litigation with similar concerns. The remedy is a protective order prepared by the attorneys involved and approved by the court stating that I will conduct my examination in such a way as to provide the maximum possible protection to the privacy of the computer owner. Material on the computers which is unrelated to the litigation will not be disclosed to any party. I alone will maintain the image copy of the hard drive and will not disclose its contents to any person without the consent of the owner, their attorney or an order from the court. All information extracted from the computers to be disclosed as part of this litigation will be approved for release by the owner and/or their attorney. Items discovered during the analysis but precluded from disclosure by claims of privilege will be documented in a privilege log. Disputes over the release of particular information will be decided

by the presiding court. My participation in the matter is similar to that of a special master. The computers to be examined should be removed from service immediately. At a minimum, removal from service would constitute being turned off and not turned back on for any reason until after a forensic examination. Ideally the computer should also be placed in the custody of a trusted neutral party. Creating an image file from a hard drive usually takes between one-half to two hours (per computer) depending on the type of computer and the size of the hard drive in question. This process is easily done on site, often at the offices of one of the attorneys involved. After the computer(s) have been examined and their hard drives imaged, at the discretion of the attorneys, they may be returned to their user and resume normal use.

    I declare under penalty of perjury according to the laws of the United States of America that the foregoing information is true and correct to the best of my knowledge and belief.

    Executed this 19th day of December, 2007, in Benicia, California.

                                                    */s/ Jon A. Berryhill*
                                                    Jon A. Berryhill