PAUL, HASTINGS, JANOFSKY & WALKER LLP
BRADFORD K. NEWMAN (SB# 178902)
bradfordnewman@paulhastings.com
STEPHEN N. YANG (SB# 142474)
stephenyang@paulhastings.com
SARJU A. NARAN (SB# 215410)
sarjunaran@paulhastings.com
SHANNON S. SEVEY (SB# 229319)
shannonsevey@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Attorneys for Plaintiffs
Arthur J. Gallagher & Co., Inc. & Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., Inc., a Delaware Corporation, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation, et al.,<br><br>Defendants. | CASE NO. 3:07-CV-06418-JSW<br><br>**SUPPLEMENTAL DECLARATION OF WARREN G. KRUSE II IN SUPPORT OF PLAINTIFF ARTHUR J. GALLAGHER & CO., INC.'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, EVIDENCE PRESERVATION ORDER, EXPEDITED DISCOVERY ORDER, AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION** |

**REDACTED**

Case No. 3:07-CV-06418-JSW                    SUPPLEMENTAL DECLARATION OF
                                              WARREN G. KRUSE II

I, Warren G. Kruse II, hereby declare and certify as follows:

1. The facts set forth in this declaration are based on my personal knowledge and if called as a witness I could and would testify thereto.

2. I have reviewed the Declarations of Ryan A. Pittman, Neil Cohn, and George Petty submitted by EPIC in this action. These declarations in no way discount or negate the findings set forth in my original declaration and, in many respects, all three declarations lend further support to my findings, and reveal the need for discovery and inspection of Neil Cohn's personal storage media.

**Pittman's Declaration**

Pittman's Examination of Storage Media

3. Mr. Pittman states that he was provided with a Sony laptop and a **750 GB** Western Digital external hard drive (large enough to potentially copy everything from Gallagher's San Ramon file server to the hard drive) that he was advised belong to Mr. Cohn, but does not provide any information regarding his inspection of either storage media, other than last accessed information.

4. Mr. Pittman provides no testimony regarding the files he found on either of Mr. Cohn's two devices, when the files were placed there, when the files were last accessed, whether copies of those files have been made to other storage media, whether files have been recently deleted from the devices, etc. In light of Mr. Cohn's admission to having used the Western Digital external hard drive and his personal Sony laptop to store Gallagher-related business, I would expect a forensic analysis of those devices to include, at the least, a search for Gallagher materials on those devices, a comparison between the file names found on the devices and the files known to have been accessed on Cohn's laptop as identified in Exhibit B to my original declaration, and a comparison between the last accessed dates for those files identified in my declaration and the creation dates for those files stored on Mr. Cohn's media.

5. Similarly, although Mr. Cohn testifies that he also used a thumbdrive of unspecified make, model, serial number, or storage capacity in connection with his work at Gallagher, and turned that device over to EPIC's counsel, Mr. Pittman does not mention his

receipt or inspection of that device in his declaration. In fact, Mr. Pittman does not mention having received, inspected, or being in the process of inspecting, any other EPIC storage media or storage media of the various employees at issue.

### Pittman's Testimony Regarding Cohn's File Access

6. Mr. Pittman goes into detail about the general nature of link files, all of which is accurate, but none of which presents an innocent explanation for the rapid activity on Mr. Cohn's laptop on December 6, 2007, described in my original declaration. Specifically, Mr. Pittman discusses that the last access time of a link file will update when a target file is open. That is an accurate statement. He also says that opening of a target file, on its own, is not evidence of copying. That statement is also true. Link file access is not the only basis for my conclusion; among other factors, I closely considered the volume of files accessed, the short periods of time within which they were accessed, and the timing of the access in relation to Mr. Cohn's departure from Gallagher, all of which data, collectively, is highly indicative of copying. In addition, as discussed below, in Mr. Cohn's declaration, he admits to accessing some of the files described in my original declaration. Furthermore, by Mr. Pittman's own explanation, last access information for a link file indicates the opening of a target file. When such file opening occurs in rapid fashion with respect to multiple files, particularly when such openings occur early in the morning and late at night the day before an employee's resignation, it creates a strong presumption of copying data to external storage media.

7. Mr. Pittman offers three hyphothetical alternative explanations for rapid file access on a person's computer: (1) automated anti-virus scanning, (2) automated backup processs, and (3) innocuous access of the "My Recent Documents" area on a computer's Start Menu. Again, although completely accurate general statements of fact, these alternative explanations do not address or explain the evidence presented in my original declaration with respect to Mr. Cohn's laptop. All three of Mr. Pittman's theories for why approximately 270 files and folders may have been accessed on Mr. Cohn's laptop on December 6, 2007 in such a short timeframe assume that the files and folders were accessed from a location on Mr. Cohn's local drive. In reality, and as discussed in my original declaration and set forth in Exhibit B thereto, approximately 235 of the

approximate 270 files and folders accessed on December 6, 2007 were stored on Gallagher's server.

8. Only approximately 35 files and folders were accessed on Cohn's local computer on December 6, 2007, as opposed to being accessed from Gallagher's server. Thus, anti-virus scanning, automated backup processes, and accessing of "My Recent Documents" on the Start Menu, are, at best, a partial hypothetical explanation of the few files and folders that were accessed on the local computer.

9. Additionally, my forensic findings, as described in my original declaration, demonstrate that at least 3 external USB drives and a CD-ROM were accessed on the computer prior to and in the midst of the rapid file and folder access on Mr. Cohn's computer on December 6, 2007. I was surprised to read nothing in either Mr. Pittman's or Mr. Cohn's declarations that offers any contrary explanation for the attachment of these devices at the times stated: "On December 5, 2007, at approximately 6:12 p.m., a Geek Squad USB drive...[on December 6, 2007] an external USB drive (registered as the E: drive) accessed at 6:01:28 a.m. and 6:02:04 a.m.; an external USB drive (registered as the F: drive) accessed at 6:01:44 a.m., 6:01:55 a.m., 6:02:01 a.m., and 6:02:04 a.m.; an external USB drive (registered as the G: drive) accessed at 6:01:55a.m.; and a CD-ROM drive (registered as the D: drive) accessed at 6:01:37 a.m.... at 6:02:02 p.m., the user accessed an external USB drive (G: drive)...From 10:08 p.m. until 10:52 p.m., the user accessed an external USB drive (G: drive) again...at 12:57:03 a.m., the user accessed the external USB drive (G: drive) once again." (See Kruse Decl., ¶ 16(b).) In the course of my career, I have conducted hundreds of forensic computer examinations. I have not encountered another situation where evidence of external media access in the midst of rapid file access has been discovered, such as exists in this instance, where neither the party who was using the computer nor an opposing forensic expert offer an explanation for such activity.

### Cohn's Defragmentation

10. The Windows operating system has options for the running of certain scheduled tasks on a computer, such as defragmentation of a hard drive on an automated default schedule or a user-specified schedule. My forensic examination of Mr. Cohn's laptop revealed no evidence

1  of the December 7, 2007 defragmentation of Mr. Cohn's hard drive having been a scheduled
2  event. Specifically, I (1) examined the Windows log of scheduled tasks, (2) searched through
3  other logs for instances of periodic and recurring defragmenting activity, (3) searched for the
4  existence of any other installed programs on the laptop which have defragmenting functionality,
5  (4) searched Cohn's registry files for any keys that would indicate defragmenting as a scheduled
6  event, and (5) booted a copy of the Encase image, to simulate usage of Mr. Cohn's laptop without
7  altering the original image, which allowed me to manually inspect the computer to determine if
8  defragmenting had been scheduled. My findings indicate that Mr. Cohn's laptop was not set to
9  defragment on an automated and scheduled basis.

10       11.     More importantly, Mr. Pittman does not dispute that Mr. Cohn's laptop was in fact
11  defragmented late in the afternoon on December 7, 2007, which necessarily means that Mr.
12  Cohn's laptop was on and running at the time of the defragmentation. That fact is important
13  based on two external data points: (1) as described in my original declaration, Gallagher's Chief
14  Information Officer, Todd Kimble advised me that the local IT person in Gallagher's San Ramon
15  office, George Petty, had been instructed to preserve Mr. Cohn's laptop; and (2) Mr. Petty
16  testifies in his declaration that he believes Mr. Cohn's laptop "was set up on a schedule to
17  periodically and automatically run a defragmenting program as general maintenance to reduce
18  problems with his computer." (See Petty Decl., ¶ 11.) In my professional opinion, Mr. Petty's
19  efforts—as an IT administrator— to secure Mr. Cohn's laptop should have included taking the
20  affirmative step of turning off the computer. It is common knowledge in the IT industry that no
21  processes can run on a computer when it is turned off, but a lot can happen if a computer is left
22  on.

23  **Cohn's Declaration**

24       12.     Mr. Cohn testifies that he accessed          files "in the days leading up to his
25  departure from Gallagher" for a Gallagher-work related purpose. (See Cohn Decl., ¶ 9.) Thus, he
26  admits that he did access some of the files identified in my original declaration, which is
27  consistent with my findings that files were accessed. However, he does not admit to all of the file
28  access, and his testimony about what he was doing with those files is further inconsistent with the

Case No. 3:07-CV-06418-JSW                           5                 SUPPL. DECL. OF WARREN G. KRUSE II

forensic evidence. The evidence demonstrates that Mr. Cohn accessed          files during the 6:01:03 a.m. to 6:02:05 a.m. timeframe on December 6, 2007 (the day before he resigned from Gallagher), along with more than 220 other files and folders that appear to be work-related.

13. The same discrepancy applies to Mr. Cohn's statement about his access to two other customers,                          . As Mr. Pittman suggests in his own declaration, the probability is low of Mr. Cohn accessing these documents among the 228 files and folders accessed within 1 minute 2 seconds on the early morning of December 6, 2007, for the purpose of opening or performing work on those files.

### Additional Forensic Evidence Regarding Cohn's Laptop

14. Since the execution of my original declaration, I have been asked to assume as true that Mr. Cohn had access to his Gallagher-assigned laptop and Gallagher's computer network through December 7, 2007. Attached hereto as Exhibit J a true and correct copy of the results of my forensic examination of Mr. Cohn's laptop on that date. The evidence reveals a list of 85 files and folders accessed on Cohn's laptop on December 7, 2007, including:

(a) **10 files and folders accessed from midnight to 12:57 a.m.**, which were included in my prior discussion of late night access on December 6, 2007 (See Kruse Decl., ¶ 16(b)(iii); and

(b) **75 files and folders accessed in less than two hours**, between 1:00 p.m. to 2:43 p.m.

15. For the same reasons set forth in my original declaration with respect to the forensic evidence on Mr. Cohn's laptop, and based on my expertise as a forensic examiner, I conclude that the file and folder access on December 7, 2007 (Mr. Cohn's date of resignation from Gallagher) is highly suggestive of copying such data to external storage media.

1    I declare under penalty of perjury according to the laws of the United States of America
2    that the foregoing is true and correct. Executed this 5 day of January 2008, at
3    ___9 30 pm___, New Jersey

_____
Warren G. Kruse II

# EXHIBIT J

*REDACTED*