# EXHIBIT 1

1   JEROME C. ROTH (SBN 159483)
    MARTIN D. BERN (SBN 153203)
2   MALCOLM A. HEINICKE (SBN 194174)
    MUNGER, TOLLES & OLSON LLP
3   560 Mission Street
    Twenty-Seventh Floor
4   San Francisco, CA  94105-2907
    Telephone:    (415) 512-4000
5   Facsimile:    (415) 512-4077

6   Attorneys for Defendant
    EDGEWOOD PARTNERS INSURANCE CENTER
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12  ARTHUR J. GALLAGHER & CO., INC.,          CASE NO.  07-CV-06418-JSW
    a Delaware Corporation, ARTHUR J.
13  GALLAGHER & CO., INSURANCE
    BROKERS OF CALIFORNIA, INC., a
14  California Corporation,

15              Plaintiffs,                    DECLARATION OF ALLEN L. AMOS

16       vs.

17  EDGEWOOD PARTNERS INSURANCE         Date:    January 11, 2008
    CENTER, a California corporation; DAN  Time:    9:00 a.m.
18  R. FRANCIS; JOHN G. HAHN;           Dept:    Courtroom 2, 17th Floor
    ANDREW ("WALLY") BROWN, JR.;
19  BRIAN F. QUINN; NEIL R. COHN;
    CAROLANN COHN; MICHAEL J.
20  BROWN; STEPHEN HAUSE; LAURA J.
    WICK; JAMES C. HALBLEIB;
21  LAURINDA ("LAURIE") A. MARTIN;
    ERIC CHUA; GEORGE J. PETTY;                **PUBLIC VERSION**
22  LINDA SOO HOO; ROBERT E. DUTTO;
    SUSAN M. ENGLISH; DON J.
23  JOHNSON; ALLEN L. AMOS;
    WILLIAM ("BILL") PHILLIPS, JR.;
24  DIRCK ("RICK") R. STINSON; ROBERT
    ("BOB") D. ELLSWORTH; ROBERT H.
25  WATKINS; PAUL H. WAGENER;
    SHANDRANETTE MIDDLETON,
26
                Defendants.
27

28

                                              A. Amos Decl.; Gallagher v. EPIC,
                                              Case No. 07-CV-06418-JSW
    4178624.1

1       I, ALLEN L. AMOS, hereby declare as follows:

2       1.    I am presently a Principal at Edgewood Partners Insurance Center

3 ("EPIC"). I make this declaration of my own personal knowledge, and if called upon to do so, I

4 could and would testify to the matters set forth herein.

5       2.    I began working in the insurance industry in 1976. I was hired by Arthur J.

6 Gallagher & Co. or one of its related companies ("Gallagher") in 2001, and prior to my

7 resignation from Gallagher on or about December 8, 2007, I worked for Gallagher as an insurance

8 broker.

9       3.    During 2007, I was exploring employment opportunities at other

10 companies. To pick one example, during September and October of 2007, I was considering an

11 offer with a company unrelated to this suit through which I would have run a specific program

12 that company was thinking of implementing. One of the main reasons I was exploring this offer

13 was because the position in question would allow me to participate in the profits of the company

14 and thus provide better compensation. Eventually, this other company elected not to initiate the

15 program, and so the job never materialized.

16       4.    One of the other reasons I was exploring other job options during 2007 was

17 that I felt Gallagher was undergoing changes that were not beneficial to brokers like myself. In

18 particular,

**REDACTED**

19

20       5.    On Friday, December 7, 2007, I attended a Gallagher staff meeting at

21 which Mr. Wally Brown and Mr. Brian Quinn announced that they were resigning from

22 Gallagher. I did not know that Wally and Brian were planning to resign prior to hearing them

23 make this announcement at this meeting, and this announcement shocked me. I found this news

24 very unsettling because I felt that these two men were key to the structure of the San Ramon

25 office. I suspected that Wally had been unhappy at Gallagher since he was effectively demoted,

26 and I heard rumors that he may be exploring other options, but I did not know of his plans to

27 leave or his plans to go to EPIC until it was announced that morning.

28       6.    On December 7, 2007, Wally and Brian stated that they were going to work

1    for EPIC but that they would not solicit anyone else to join them. I approached Brian to ask him

2    about EPIC, but he simply provided me with Mary Smith's phone number. I called Mary Smith

3    to explore job opportunities and requested an interview. Later that same day, I met with John

4    Hahn and Dan Francis of EPIC. During this interview, I voluntarily provided them with

5    information about my compensation at Gallagher. On December 8, 2007, EPIC made me an

6    employment offer, and I eventually accepted it. I then resigned my employment from Gallagher.

7           7.     I first learned about the formation of EPIC from a business contact at an

8    insurance carrier during July 2007. This same contact mentioned EPIC several more times to me

9    over the summer, and I knew that Dan Francis was responsible for this new company and knew of

10    his strong reputation in the insurance industry. Prior to my December 7, 2007 interview,

11    however, EPIC never recruited me or otherwise contacted me about a job.

12           8.     The main reason I left Gallagher for EPIC was that EPIC provided a much

13    greater compensation package -- specifically, EPIC is providing me both with shares (equity

14    participation) as well as direct payments. In addition, I decided to leave Gallagher because of my

15    respect for Wally Brown and my desire to continue working for him. People often referred to the

16    San Ramon office of Gallagher as "Wally's World," and I wanted to continue working for Wally.

17           9.     During the interview and eventual hiring process at EPIC, EPIC personnel

18    made clear to me that EPIC would not allow me to bring any Gallagher property with me to my

19    new job at EPIC, and I followed these instructions. I have not taken or retained any Gallagher

20    materials or property since starting work at EPIC.

21          10.    Following my resignation from Gallagher, I attempted to return to the

22    Gallagher office to obtain some personal items. Along with other former Gallagher employees,

23    we called the Gallagher office to request access. Initially, we were told that we could return to

24    recover our personal items, but shortly thereafter, we were told that we could not retrieve these

25    items. I have yet to recover these items.

26          11.    When I began at EPIC, I announced my new position through a

27    "tombstone" announcement. Attached as Exhibit A to this declaration is a true and correct copy

28    of the announcement that I sent and that is representative of all the tombstone announcements I

4178624.1

-- 2 --

A. Amos Decl.; Gallagher v. EPIC,
Case No. 07-CV-06418-JSW

1  sent. It is my understanding that all new Principals at EPIC used a nearly identical

2  announcement.

3          12.    In response to this tombstone announcement, many clients that I had

4  formerly represented when I was employed at Gallagher contacted me and asked me to continue

5  representing them now that I was EPIC. It is my feeling that clients in the insurance industry are

6  often closer and more loyal to the individual who is their broker than they are to the firm where

7  that broker happens to work. For example, a representative from Duraflame responded to my

8  tombstone announcement by stating that he felt his pertinent relationship was with me, not with

9  my past brokerage firm (Gallagher), and so he and his company wanted to continue doing

10  business with me. Attached as Exhibit A to this declaration is a true and correct copy of the

11  announcement that I sent to Duraflame and the response that I received.

12          13.    I understand that Gallagher has suggested in this lawsuit that EPIC

13  solicited Duraflame's business through the use of proprietary Gallagher data, perhaps including

14  information that was allegedly copied and provided by Shandranette Middleton. Such

15  suggestions are unfounded. Duraflame responded to my tombstone within one hour and

16  demonstrated its desire to continue working with me. This was the extent of the exchange. I did

17  not use any Gallagher materials to solicit Duraflame, and I never received any data or materials

18  pertaining to Duraflame from Ms. Middleton.

19          14.    I understand that Lynn Tu has submitted a declaration in this matter

20  hypothesizing that my body language at the December 7, 2007 meeting suggested that I knew in

21  advance that Wally and Brian were resigning from Gallagher to join EPIC. I had no such

22  advance knowledge. When I learned that Wally and Brian were leaving at that meeting, I was

23  stunned and concerned and very nervous about my career future.

24          15.    I also understand that Lynn Tu has submitted a declaration in this matter

25  stating that she feels she was encouraged to join EPIC. On December 7, 2007, while I was still

26  very upset about Wally and Brian's announcement, Ms. Tu informed me that she was going to

27  speak with EPIC about a possible job at EPIC for herself. After apparently speaking with EPIC,

28  Ms. Tu called me on my cell phone to encourage me to work for EPIC -- specifically, she told me

1   that I should go to work for EPIC because the "deal" or compensation package EPIC was offering

2   was, in her opinion, very strong.  She said that she and I were at the age where we needed to start

3   thinking about retirement, and she said she was "fifty-fifty" about whether she would go work for

4   EPIC or not.

5          16.    I make this declaration voluntarily.  I understand that EPIC has not

6   required me to provide this declaration as part of my job, and that I could have declined to do so

7   without suffering any adverse career consequences.

8          I declare under penalty of perjury under the laws of the State of California and the

9   United States that the foregoing is true and correct, and that this declaration is executed this _2_nd

10  day of January, 2008 in San Ramon, California.

11

12

13              By: _____

14                        ALLEN L. AMOS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## Allen Amos

**From:**    John Wilding [JWilding@Juraflame.com]
**Sent:**    Monday, December 10, 2007 9:23 AM
**To:**      Allen Amos
**Subject:** RE: Allen Amos joins EP!C

Please call me to discuss this change, the relationships I have are with people not an organization.

------Original Message-----
**From:** Allen Amos [mailto:aamos@edgewoodins.com]
**Sent:** Monday, December 10, 2007 8:33 AM
**To:** undisclosed-recipients
**Subject:** Allen Amos joins EPIC

Allen Amos has joined Edgewood Partners Insurance Center ( E.P.I.C ). Edgewood Partners, a newly
funded retail property/casualty and employee benefits firm based in San Mateo, California, received $100
million in private equity from Stone Point Capital. Edgewood's market focus will be Construction,
Transportation, Technology, Life Science, Employee Benefits and other specialty niches.

Allen Amos
Principal
Edgewood Partners
4000 Executive Parkway, Suite 200
San Ramon, CA 94583
aamos@edgewoodins.com
cell. 925 785-9873



"The contents of this email message and any attachments are intended solely for the addressee(s)
and may contain confidential and/or legally privileged information. If you are not the intended
recipient of this message or if this message has been addressed to you in error, please immediately
alert the sender by reply e-mail and then delete this message and any attachments. If you are not
the intended recipient, you are notified that any use, dissemination, distribution, copying, or
storage of this message or any of its attachment is strictly prohibited."