# EXHIBIT 13

1  JEROME C. ROTH (SBN 159483)
   MARTIN D. BERN (SBN 153203)
2  MALCOLM A. HEINICKE (SBN 194174)
   MUNGER, TOLLES & OLSON LLP
3  560 Mission Street
   Twenty-Seventh Floor
4  San Francisco, CA 94105-2907
   Telephone: (415) 512-4000
5  Facsimile: (415) 512-4077

6  Attorneys for Defendant
   EDGEWOOD PARTNERS INSURANCE CENTER
7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12 | ARTHUR J. GALLAGHER & CO., INC., | CASE NO. 07-CV-06418-JSW
   | a Delaware Corporation, ARTHUR J.
13 | GALLAGHER & CO., INSURANCE
   | BROKERS OF CALIFORNIA, INC., a
14 | California Corporation,

15 | Plaintiffs, | DECLARATION OF ERIC CHUA

16 | vs.

17 | EDGEWOOD PARTNERS INSURANCE | Date: January 11, 2008
   | CENTER, a California corporation; DAN | Time: 9:00 a.m.
18 | R. FRANCIS; JOHN G. HAHN; | Dept: Courtroom 2, 17th Floor
   | ANDREW ("WALLY") BROWN, JR.;
19 | BRIAN F. QUINN; NEIL R. COHN;
   | CAROLANN COHN; MICHAEL J.
20 | BROWN; STEPHEN HAUSE; LAURA J. | **PUBLIC VERSION**
   | WICK; JAMES C. HALBLEIB;
21 | LAURINDA ("LAURIE") A. MARTIN;
   | ERIC CHUA; GEORGE J. PETTY;
22 | LINDA SOO HOO; ROBERT E. DUTTO;
   | SUSAN M. ENGLISH; DON J.
23 | JOHNSON; ALLEN L. AMOS;
   | WILLIAM ("BILL") PHILLIPS, JR.;
24 | DIRCK ("RICK") R. STINSON; ROBERT
   | ("BOB") D. ELLSWORTH; ROBERT H.
25 | WATKINS; PAUL H. WAGENER;
   | SHANDRANETTE MIDDLETON,
26
   | Defendants.
27

28

4178430.1

Eric Chua Decl.; Gallagher v. EPIC,
Case No. 07-CV-06418-JSW

I, ERIC CHUA, hereby declare as follows:

1. I am presently employed at Edgewood Partners Insurance Center ("EPIC") as a Senior Account Manager. I make this declaration of my own personal knowledge, and if called upon to do so, I could and would testify to the matters set forth herein.

2. On June 5, 2006, I was hired by Arthur J. Gallagher & Co. ("Gallagher") as an Account Manager. Prior to joining Gallagher I worked at Marsh & McLennan for approximately 6 years. Over the last few years, I felt that the atmosphere at Gallagher had become less personal and less enjoyable. In addition, I was very dissatisfied with my compensation.

**REDACTED**                    **REDACTED**

3. On the morning of Friday, December 7, 2007, I attended a meeting at Gallagher's San Ramon office. In that meeting, I learned for the first time that Wally Brown, Brian Quinn, and Michael Brown had resigned from Gallagher. Prior to that meeting, I had heard no rumors of their intent to resign. Nor had I ever heard of EPIC, the company where they were going. Their announcement was a surprise to me.

4. After the meeting, I approached Brian Quinn to say goodbye and to inquire where he was going. Brian stated that he was going to EPIC. I inquired whether EPIC was hiring. Brian told me that he could not solicit me. He said if I wanted more information I could call Mary Smith, and he gave me her telephone number.

5. I contacted Mary Smith that day and told her that I was interested in seeking employment at EPIC. I obtained an interview later that day with Ms. Smith, during which I provided the salary and vacation benefits that I was seeking.

6. On December 8, 2007, I came to work, as I often did on the weekends, and finished some work that I had not completed during the week.

7. I received an offer of employment from EPIC on Sunday, December 9, 2007. At that time, I was unsure whether I wanted to accept the offer, or whether I might stay and

1  attempt to move up at Gallagher. I inquired of my supervisor and the human resources director as
2  to opportunities if I stayed with the company, but did not receive any responses.
3       8.    As of Monday, December 10, 2007, I had not yet decided to leave
4  Gallagher, so I reported to work. I understood that the Area Manager, Mr. Jim McFarlane, was
5  going to speak to the employees, and I wanted to hear what he was going to say on behalf of
6  Gallagher.
7       9.    I arrived early at the office and was greeted by Mr. McFarlane. We spoke
8  for more than 30 minutes about what happened on Friday. Mr. McFarlane asked me what I did.
9  When I explained that I serviced large Workers' Compensation accounts, Mr. McFarland asked if
10 I had access to a list of such accounts. I answered that I did, and he asked that I print him a copy
11 of that list. I then accessed the file containing the list on my computer, and delivered a copy of
12 the list to Mr. McFarlane in the main conference room. I proceeded to work on other matters that
13 morning before the meeting that was called for that morning.
14      10.   I understand that Mr. McFarlane has stated in his declaration filed with the
15 court that I accessed a file containing a list of Workers' Compensation accounts and "presumably
16 copied" this information in order to use it at EPIC. This is not true. *The only reason I accessed*
17 *and printed this list of Workers' Compensation accounts on the morning of December 10, 2007,*
18 *was because Mr. McFarlane himself requested that I provide him with the document.*
19      11.   Later that morning I attended the meeting at which Mr. McFarlane spoke to
20 the Gallagher employees. Mr. McFarlane did not provide me

21                           **REDACTED**
22                   A primary reason for my move to Gallagher from Marsh &
23 McLennan was to work closer to where I live. Therefore, rather than risk having to commute to
24 another office to work, I decided to accept the offer I had received from EPIC.
25      12.   During the remainder of the morning I completed work that needed to be
26 done, such as calling clients and requesting payments to Gallagher. After lunch, I submitted my
27 resignation to Gabrielle Simpson. I then packed my personal materials, put files away, and
28 prepared my desk so that another person could pick up where I left off. When I left the office,

1  Gabrielle checked my personal belongings to make sure I did not have any confidential Gallagher
2  property.

3      13.    At no point did anyone solicit me, or attempt to convince me, to take a
4  position at EPIC. I made the decision to move to EPIC after considering my options.

5      14.    I own a memory stick that I would use occasionally over the past 1 ½ years
6  at Gallagher as a back up, or to take materials home with me to work on in the evening. I did not
7  use the memory stick at Gallagher any time after learning that Wally and Brian had resigned from
8  Gallagher. On Monday evening, I accessed my memory stick at home and copied all Gallagher-
9  related materials onto a second, clean memory stick. I then deleted the Gallagher-related
10 materials from the original memory stick. I also searched my personal laptop and found a small
11 number of Gallagher files. Again, I copied these files to the second memory stick and deleted
12 them from my laptop. I did not use any of the Gallagher files on the second memory stick.
13 Subsequently, I turned in the second memory stick to counsel for EPIC. It has not been returned
14 to me.

15     15.    During the interview and eventual hiring process at EPIC, EPIC personnel
16 made clear to me that EPIC would not allow me to bring any Gallagher property with me to my
17 new job at EPIC, and I followed these instructions. I have not taken or retained any Gallagher
18 materials or property since starting work at EPIC.

19     16.    At no point in time have I solicited or encouraged any Gallagher employee
20 to seek employment at EPIC.

21     17.    While at Marsh & McLennan, I developed two small accounts. When I
22 moved to Gallagher, these two accounts transferred the accounts to Gallagher in order to continue
23 working with me. After I started work at EPIC, I sent a "tombstone" email to these two accounts
24 informing them that I had joined EPIC. I did not take any materials related to these two clients
25 with me from Gallagher; nor would I need to,

26 **REDACTED**

27     18.    I received a phone call from one client, who requested a Broker of Record
28 letter to move the account to EPIC. I also received an email from my main contact at my other

1  client, REDACTED  I called REDACTED and explained that I had resigned
2  from Gallagher and taken a position at EPIC, as stated in my tombstone email. REDACTED said
3  that she wanted to continue working with me, but that she needed approval from her boss. I sent
4  her a Broker of Record letter that she could use after receiving the necessary internal approval.
5  Gallagher has asserted in a declaration submitted by Ms. Demaret of Gallagher's World Wide
6  Risk Services. In her declaration, Ms. Demaret draws several "interpretations" that are incorrect.
7  Ms. Demaret, in essence, asserts that I somehow misrepresented to REDACTED that
8  Gallagher had been "sold" to EPIC. However, the very email upon which she relies reveals that
9  this is not true, and that I never made any such statement. Indeed, the "re" line in the email ("Eric
10 Chua has joined Edgewood Partners Insurance Center"), and the Tombstone statement attached to
11 the email contradict Ms. Demaret's interpretation. The email chain reflects that my contact at
12 REDACTED forwarded the email chain to another
13 person in London, who apparently drew the incorrect conclusion that EPIC had purchased the
14 business from Gallagher. When the email worked its way back to me the next day I immediately
15 corrected this person's misimpression, as reflected in my response email. Ms. Demaret also
16 mistakenly states that I was assigned to the REDACTED account after I arrived at
17 Gallagher. **REDACTED**
18   REDACTED broker contacted me and asked me to represent them in the United
19 States. This is borne out by the fact that I received a commission from the account when working
20 at Gallagher. Had the account simply been assigned to me by Gallagher as part of my work as
21 account manager, I would not have earned any commission.
22        19.   I make this declaration voluntarily. I understand that EPIC has not
23 required me to provide this declaration as part of my job, and that I could have declined to do so
24 without suffering any adverse career consequences.
25 //
26 //
27 //
28 //

1       I declare under penalty of perjury under the laws of the State of California and the
2 United States that the foregoing is true and correct, and that this declaration is executed this 3RD
3 day of January, 2008 in San Ramon, California.

By: _____
ERIC CHUA