# EXHIBIT 27

1  JEROME C. ROTH (SBN 159483)
   MARTIN D. BERN (SBN 153203)
2  MALCOLM A. HEINICKE (SBN 194174)
   MUNGER, TOLLES & OLSON LLP
3  560 Mission Street
   Twenty-Seventh Floor
4  San Francisco, CA 94105-2907
   Telephone:    (415) 512-4000
5  Facsimile:    (415) 512-4077

6  Attorneys for Defendant
   EDGEWOOD PARTNERS INSURANCE CENTER
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC., a California Corporation,<br><br>15         Plaintiffs,<br><br>16    vs.<br><br>17  EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; DAN R. FRANCIS; JOHN G. HAHN; ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; NEIL R. COHN; CAROLANN COHN; MICHAEL J. BROWN; STEPHEN HAUSE; LAURA J. WICK; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; SHANDRANETTE MIDDLETON,<br><br>Defendants. | CASE NO. 07-CV-06418-JSW<br><br>DECLARATION OF STEPHEN HAUSE<br><br>Date:    January 11, 2008<br>Time:    9:00 a.m.<br>Dept:    Courtroom 2, 17th Floor<br><br>**PUBLIC VERSION** |

4179457.1

I, STEPHEN HAUSE, hereby declare as follows:

1. I am presently a Principal at Edgewood Partners Insurance Center ("EPIC"). I make this declaration of my own personal knowledge, and if called upon to do so, I could and would testify to the matters set forth herein.

2. I began working in the insurance industry in 1971. I began working with Wally Brown in 1984, and I feel a significant amount of personal and professional loyalty to Wally.

3. I was hired by Arthur J. Gallagher & Co. or one of its related companies ("Gallagher") in 1987, and prior to my resignation from Gallagher on or about December 7, 2007, I worked for Gallagher as an insurance broker. I worked under the supervision of Wally Brown in that position.

4. During 2006 and 2007, I received several inquiries from recruiters ("head-hunters") about job possibilities and other insurance firms. I explored and expressed interest in several of these opportunities. During this time, Gallagher had made some changes in its business that I viewed as unfavorable to brokers like me.

**REDACTED**

5. I first learned about EPIC in the early or middle part of 2007 because its formation was significant news in the insurance industry. I knew of Dan Francis and John Hahn and their strong reputations in the industry, and this was further reason that EPIC's formation caught my attention.

6. In or about September or October of 2007, I was contacted by a recruiter named Gene who informed me that a firm called West Calloway may be interested in hiring me. In this same conversation, the recruiter suggested to me that EPIC may also be seeking brokers, but he never suggested that he was working for EPIC and he never recruited me to join EPIC, and I had no further discussions with this recruiter concerning EPIC. Subsequently, I called John Hahn at EPIC to discuss EPIC's background and business plan. After that conversation, I did not speak with anyone at EPIC until December 7, 2007. I did, however, follow up on the opportunity

with West Calloway, and I exchanged messages with an executive at that company (Terry Stotka). I stated my interest in West Calloway, and the executive and I agreed to resume discussions at the start of 2008. At that point, and until December 7, 2007, I had no idea that I would be leaving Gallagher for EPIC, and no one at Gallagher or EPIC recruited me to join EPIC.

7. On Friday, December 7, 2007, I attended a Gallagher meeting at which Mr. Wally Brown and Mr. Brian Quinn announced that they were resigning from Gallagher. I did not know that Wally and Brian were planning to resign prior to hearing them make this announcement at this meeting, and this announcement was a surprise to me. Prior to this announcement, I knew that Wally was unhappy with the fact that Gallagher had essentially demoted him and I thought he could possibly be looking for other places to work, but until December 7, 2007, I had no idea he would actually resign and no idea that he had decided to go to EPIC. During the meeting at which Wally and Brian made their announcement, they did not encourage me or anyone else at the meeting to follow them to EPIC, and they did not so encourage me after the meeting.

8. On December 7, 2007, after Wally and Brian stated that they were going to work for EPIC, I called to inquire whether EPIC was hiring, and EPIC arranged an interview for me with Dan Francis and John Hahn for that day. During this interview process, I voluntarily provided EPIC with information about my compensation at Gallagher. We discussed EPIC's business model, and I realized that EPIC provided a much better financial opportunity for me than Gallagher did. I received an offer from EPIC, and I accepted it and resigned from Gallagher later that day. One of the main reasons I made this decision was because of my personal loyalty to Wally and my desire to follow Wally and Brian to this new venture.

9. When I began at EPIC, I announced my new position through a "tombstone" announcement. In response to this tombstone announcement, many clients that I had formerly represented when I was employed at Gallagher contacted me and asked me to continue representing them now that I was at EPIC. It is my feeling that clients in the insurance industry are often closer and more loyal to the individual who is their broker than they are to the firm

where that broker happens to work.

10. During the interview and eventual hiring process at EPIC, EPIC personnel made clear to me that EPIC would not allow me to bring any Gallagher property with me to my new job at EPIC, and I followed these instructions. With the exception of the facts noted below, I did not take any Gallagher materials or property with me following my resignation.

11. Prior to my resignation from Gallagher on December 7, 2007 and prior to my having any knowledge that I would be leaving to join EPIC, and thus while I was still at Gallagher, I arranged a meeting with                         a client. The purpose of the meeting was to discuss **REDACTED**
In advance of this meeting, I planned to show Mr.        a copy of a Gallagher document reflecting **REDACTED**
**REDACTED** This meeting was originally set to take place prior to December 7, 2007, but, while I was still employed at Gallagher, it was postponed to a later date in December 2007.

12. At the time the meeting was postponed, I had the document that I planned to use in the meeting in my possession, and I kept it with me after leaving Gallagher for EPIC. After I joined EPIC, I met with Mr.^REDACTED as I had previously arranged. When I attended this meeting, I still had the document reflecting **REDACTED** with me, and I presented it to the client representative. I did this simply because I had previously planned to present this document to the client. No one at EPIC told me to present this document to Gallagher, and in fact, as stated above, EPIC made clear that I was not to take or use any documents from Gallagher. I now realize that EPIC's instructions should have prevented me from presenting the document in question to the client at   REDACTED   In other words, I made a mistake and acted against the direct instructions I received from EPIC. I have apologized to EPIC personnel for this error. This mistake was a careless oversight on my part, and I have not presented any other clients or potential clients with Gallagher documents.

13. The next time I spoke with Mr.^REDACTED he informed me that he planned to

keep his company's business at Gallagher. To my knowledge, he has done so. EPIC does not represent REDACTED  My conversation with Mr. REDACTED was cordial, and he did not suggest that he felt I had done anything wrong from his point of view.

14. Prior to my resignation from Gallagher, I did not encourage any Gallagher employees to join EPIC, and since my resignation, I have not done so.

15. I understand that Gallagher is attempting to suggest in this lawsuit that EPIC and its brokers have successfully solicited former Gallagher clients through the use of proprietary Gallagher data. I have no reason to believe that such allegations are true, and in fact, I believe them to be false.

16. I make this declaration voluntarily. I understand that EPIC has not required me to provide this declaration as part of my job, and that I could have declined to do so without suffering any adverse career consequences.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration is executed on the 3 day of January, 2008 in San Ramon, California.

By: _____
STEPHEN HAUSE