# EXHIBIT 29

| | |
|---|---|
| 1 | JEROME C. ROTH (SBN 159483) |
| | MARTIN D. BERN (SBN 153203) |
| 2 | MALCOLM A. HEINICKE (SBN 194174) |
| | MUNGER, TOLLES & OLSON LLP |
| 3 | 560 Mission Street |
| | Twenty-Seventh Floor |
| 4 | San Francisco, CA 94105-2907 |
| | Telephone: (415) 512-4000 |
| 5 | Facsimile: (415) 512-4077 |
| 6 | Attorneys for Defendant |
| | EDGEWOOD PARTNERS INSURANCE CENTER |
| 7 | |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC., a California Corporation, | CASE NO. 07-CV-06418-JSW |
| Plaintiffs, | DECLARATION OF BARBARA L. HILGEN |
| vs. | |
| EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; DAN R. FRANCIS; JOHN G. HAHN; ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; NEIL R. COHN; CAROLANN COHN; MICHAEL J. BROWN; STEPHEN HAUSE; LAURA J. WICK; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; SHANDRANETTE MIDDLETON, | Date: January 11, 2008<br>Time: 9:00 a.m.<br>Dept: Courtroom 2, 17th Floor<br><br>**PUBLIC VERSION** |
| Defendants. | |

4173760.1

Hilgen Decl. ISO Opp. to TRO; <u>Gallagher v. EPIC</u>, Case No. 07-CV-06418-JSW

I, BARBARA L. HILGEN, hereby declare as follows:

1. Between May of 2005 and December of 2007, I was an employee in the San Ramon Office of Plaintiff Arthur J. Gallagher & Co. ("Gallagher"). During my employment with Gallagher, I held the positions of Area Vice President and Account Manager. My responsibilities as an employee of Gallagher included negotiating policy terms with insurance carriers, performing risk assessments, projecting losses, analyzing quotes, and reviewing insurance policies.

2. I understand that Gallagher has asserted in this litigation that the recent departure of 49 employees from Gallagher was a carefully planned and pre-orchestrated conspiracy. This is not correct.

3. I worked directly with Defendants Brian Quinn and Wally Brown during my tenure at Gallagher. During the week of December 3, 2007, I began to suspect that they had entered into negotiations about leaving Gallagher to work with another company, but at that point, I did not know this for sure, or what company Wally or Brian was in discussion with, if any. I formed these suspicions because I had observed them having a series of serious discussions with each other with their office doors closed, which was unusual behavior in the office.

4. I approached Mr. Quinn and asked him whether he intended to leave Gallagher. He expressed surprise at my question, and he told me that he could not discuss the matter. I also approached Mr. Brown and asked him whether he intended to leave Gallagher. He also stated that he was not at liberty to discuss the issue.

5. It was on Thursday, December 6, 2007, that I first learned that Defendants Brown and Quinn intended to leave Gallagher to join EPIC. On that day, after I approached her with my same concerns, Defendant Carol Cohn informed me that she had decided to leave Gallagher and go to EPIC, and that Mr. Brown and Mr. Quinn were also planning to go to EPIC. Ms. Cohn told me that they would be announcing their resignations the following morning at an all-hands meeting in the San Ramon office. At no time prior to December 6, 2007, did I hear that anyone was planning to leave Gallagher to work at EPIC.

6. I expressed concern to Ms. Cohn about whether my position at Gallagher would be secure once Mr. Brown and Mr. Quinn had left the company. I had worked directly with both men during the more than two years I spent at Gallagher, and I had spent approximately 80 percent of my time on their accounts. I considered Mr. Brown and Mr. Quinn to have longstanding, solid relationships with their clients, and without them at the office, I did not feel that I would have business to work on. I expressed my serious concerns about my job to Ms. Cohn. I asked about EPIC and possible opportunities there, and in response to this, Ms. Cohn provided me with contact information for Mary Smith, the Director of Human Resources at EPIC, where Mr. Brown and Mr. Quinn were going to work.

7. I contacted Ms. Smith that afternoon, on Thursday, December 6, 2007. Prior to that conversation, I had had no contact with anyone at EPIC. Ms. Smith sent to me an application for employment, which I returned to her the following morning, Friday, December 7, 2007, at 7:30 a.m., when I went to the interview. During my interview, I told Ms. Smith that I enjoyed working with Mr. Brown and Mr. Quinn, and that I wanted to continue to do so.

8. Ms. Smith admonished me repeatedly during the interview that if I were to accept a job at EPIC, I would not be allowed to bring any confidential or proprietary information with me, including any information about Gallagher's clients. Later that afternoon, at approximately 3:30 p.m. on December 7, 2007, I received a letter offering employment at EPIC.

9. I submitted my resignation to Gallagher the following Monday, December 10, 2007. That same morning, I retrieved my personal effects from my office at Gallagher. I took no Gallagher property or files with me. I did not copy, download, delete, or otherwise misappropriate any of Gallagher's trade secrets when I left.

10. My decision to move from Gallagher to EPIC was not the result of any solicitation by any of my former colleagues at Gallagher, including by Mr. Brown, Mr. Quinn, or Ms. Cohn. I left because I enjoyed working with Mr. Brown and Mr. Quinn and wanted to continue to do so. Because I had worked on their accounts, I knew that Mr. Brown and Mr. Quinn had enjoyed great relationships and had earned the loyalty of their clients. I wanted to continue to work on those accounts, and I believed they would follow Mr. Brown and Mr. Quinn

1 | wherever they moved.

2 |   11. There were also additional reasons why I was willing to leave Gallagher on
3 short notice. In particular, I had been dissatisfied with the terms of my employment there. At the
4 end of my first year, I had received no increase in my salary. In fact, Gallagher's office manager
5 had approached me that year to explain that Gallagher    REDACTED
6 REDACTED She had asked me
7        **REDACTED**

8     One year later, at the end of my second year, I received a
9 salary increase of only two percent. In addition, I believed that Gallagher provided me with
10   REDACTED  and I was concerned about job security at the company, as  REDACTED
11     REDACTED    Finally, EPIC offered me a considerably
12 more attractive compensation package and better benefits.
13 //
14 //
15 //
16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

4173760.1     -- 3 --    Hilgen Decl. ISO Opp. to TRO; Gallagher v.
               EPIC, Case No. 07-CV-06418-JSW

1     12.     Since beginning work at EPIC, I have used no information taken from Gallagher's San Ramon office. Nor, at any point, did I solicit or encourage any of my colleagues at Gallagher to move to EPIC.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration is executed this 28th day of December, 2007, in San Ramon, California

DATED: December 28, 2007          By: _____*Barbara L. Hilgen*_____
                                                                              BARBARA L. HILGEN