# EXHIBIT 35

| | |
|---|---|
| 1 | JEROME C. ROTH (SBN 159483) |
| | MARTIN D. BERN (SBN 153203) |
| 2 | MALCOLM A. HEINICKE (SBN 194174) |
| | MUNGER, TOLLES & OLSON LLP |
| 3 | 560 Mission Street |
| | Twenty-Seventh Floor |
| 4 | San Francisco, CA 94105-2907 |
| | Telephone:   (415) 512-4000 |
| 5 | Facsimile:   (415) 512-4077 |
| 6 | Attorneys for Defendant |
| | EDGEWOOD PARTNERS INSURANCE CENTER |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC., a California Corporation,

　　　　Plaintiffs,

vs.

EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; DAN R. FRANCIS; JOHN G. HAHN; ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; NEIL R. COHN; CAROLANN COHN; MICHAEL J. BROWN; STEPHEN HAUSE; LAURA J. WICK; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; SHANDRANETTE MIDDLETON,

　　　　Defendants.

CASE NO. 07-CV-06418-JSW

**DECLARATION OF SHANDRANETTE MIDDLETON**

Date:　　January 11, 2008
Time:　　9:00 a.m.
Dept:　　Courtroom 2, 17th Floor

**PUBLIC VERSION**

4179369.1

Middleton Decl.; Gallagher v. EPIC,
Case No. 07-CV-06418-JSW

I, SHANDRANETTE MIDDLETON, hereby declare as follows:

1. I am presently an employee at Edgewood Partners Insurance Center ("EPIC"). I make this declaration of my own personal knowledge, and if called upon to do so, I could and would testify to the matters set forth herein.

2. I began working for Arthur J. Gallagher & Co. or one of its related companies ("Gallagher") in 2001, and prior to my resignation from Gallagher on or about December 11, 2007, I worked for Gallagher on workers compensation insurance issues. In July of 2003, I left Gallagher to start my own floral business, but I subsequently returned to Gallagher to work part-time as an independent consultant and then resumed full-time work with Gallagher in January 2006.

3. Wally Brown and Laura Wick hired me to the Gallagher office initially, and when I returned in 2006, it was these same two people who re-hired me full time. I feel a significant personal loyalty to Wally, Laura, and Brian Quinn.

4. In early December 2007, I was informed that there would be an "all hands" sales meeting, i.e., a meeting of all of the employees in the Gallagher office, on the morning December 7, 2007. I was concerned that I could not attend this meeting because I had an appointment that morning. On December 6, 2007, at or around 6:00 p.m., I approached Wally Brown and Brian Quinn to tell them I might not be able to attend the meeting the next morning, and i wanted to know if there was anything I needed to know. They told me that they would be resigning their positions. This was the first I had heard of this, and I was in a state of shock and disbelief. I remember specifically asking if they were joking. They told me they were not. After this conversation, I went home and began considering what to do next, and I began to think that it may make sense for me to try to follow Wally and Brian to their new company if possible because it was my feeling that their clients were very loyal to them personally (not Gallagher) and thus there might be much more work at the new company. Between learning of Wally's and Brian's plans to leave Gallagher on December 6 and the meeting the next morning, I did not tell anyone that Wally and Brian were planning to leave.

5. The next morning, I went to the Gallagher office. At this point, I was

concerned that if I decided to follow Wally and Brian to a new job, Gallagher would expel me from the office immediately. Specifically, I was concerned that I would be asked to leave before I could collect the **REDACTED** I had prepared over my time at Gallagher and that I might need later in my career. At that point, I did not recall receiving any training on the importance of not taking such files with me, and I did not think there would anything wrong with my copying and retaining **REDACTED** **REDACTED** Accordingly, at about 7:30 a.m., I borrowed a memory stick device from a colleague. I did not tell my colleague what I was planning to copy. Then, at about the same time (around 7:30 a.m.), while still a Gallagher employee and before I had received an offer from EPIC, I copied various spreadsheets to the memory stick. I never subsequently accessed the memory stick or copied the documents from the memory stick to any other device. (I understand that Gallagher has suggested that I accessed and copied 252 files over 46 minutes, but I do not think this is accurate -- I recall that I copied fewer files, probably over a shorter period of time.)

6. Later that day, following the short meeting in which Brian and Wally announced that they were resigning, I approached Brian and asked if there were job opportunities at the company he was leaving for. Brian provided me the phone number for Mary Smith at EPIC, but he did not give further details on EPIC. I contacted Mary Smith and scheduled an interview at EPIC for the later that day, after my morning appointment.

7. When I interviewed with Ms. Smith, I voluntarily provided her with information on my then-current compensation at Gallagher.

8. Also, when I interviewed with Ms. Smith, she made it very clear to me that if I left Gallagher to work for EPIC, EPIC would not allow or permit me to bring any materials over from Gallagher to EPIC. I did not tell Ms. Smith about the files I had copied. At this point, I realized that I would not be allowed to bring to EPIC the documents that I had copied onto the memory stick earlier that day from Gallagher to EPIC. Prior to that moment, I had not thought that what I had done was in any way wrong, and I accordingly gave no thought to the issue of whether Gallagher would be able to determine that I had copied the documents. After speaking

1  with Ms. Smith, however, having never removed the memory stick at issue from the Gallagher
2  office, and having never accessed or allowed anyone else to access the memory stick, I returned
3  from EPIC to the Gallagher office and threw the memory stick in a trash can. I never saw the
4  memory stick again. It is my belief that the memory stick was discarded with the rest of the trash.
5  I threw the memory stick in the trash because I had come to realize that, if I did leave, I could not
6  bring the memory stick with me and because I was concerned in light of Ms. Smith's admonition.

7       9.    No one else, including no one at Gallagher and no one at EPIC, asked or
8  suggested that I copy these files to the memory stick. I took this action on my own. Similarly, I
9  discarded the memory stick on my own, without any input from anyone at Gallagher or EPIC.

10      10.   After I subsequently received an offer of employment from EPIC, I
11 accepted it, and soon thereafter, I resigned my employment at Gallagher on or about the morning
12 of December 11, 2007. I turned in my Gallagher key card to Gallagher, and I did not take any
13 Gallagher property with me. Specifically, I did not take any files, client information or client lists
14 with me from Gallagher to EPIC. I never uploaded any files, including the files on the memory
15 stick I discarded, into my EPIC computer or into the EPIC computer system generally.

16      11.   After I began working at EPIC, on December 11, 2007, before I had any
17 knowledge of this lawsuit, I informed EPIC General Counsel Dan Crawford that I had copied
18 files to the memory stick as described above and that I had discarded the stick. Mr. Crawford
19 explained to me that under no circumstances was I to bring any Gallagher materials to EPIC, and
20 I confirmed with him that I had not taken any Gallagher materials from Gallagher with me to
21 EPIC. Since joining EPIC. I have not spoken to any clients about them switching from Gallagher
22 broker(s) to EPIC broker(s).

23      12.   I make this declaration voluntarily. I understand that EPIC has not
24 required me to provide this declaration as part of my job, and that I could have declined to do so
25 without suffering any adverse career consequences.

26
27
28

1   I declare under penalty of perjury under the laws of the State of California and the
2   United States that the foregoing is true and correct, and that this declaration is executed on this
3   3 day of January, 2008, in San Ramon, California.
4   By: /s/ Shandranette Middleton
5   SHANDRANETTE MIDDLETON