# EXHIBIT 36

1   JEROME C. ROTH (SBN 159483)
    MARTIN D. BERN (SBN 153203)
2   MALCOLM A. HEINICKE (SBN 194174)
    MUNGER, TOLLES & OLSON LLP
3   560 Mission Street
    Twenty-Seventh Floor
4   San Francisco, CA  94105-2907
    Telephone:    (415) 512-4000
5   Facsimile:    (415) 512-4077

6   Attorneys for Defendant
    EDGEWOOD PARTNERS INSURANCE CENTER

7

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  ARTHUR J. GALLAGHER & CO., INC.,        CASE NO.  07-CV-06418-JSW
    a Delaware Corporation, ARTHUR J.
13  GALLAGHER & CO., INSURANCE
    BROKERS OF CALIFORNIA, INC., a
14  California Corporation,                 **DECLARATION OF SIOBHAN O'LEARY**

15                   Plaintiffs,

16          vs.

17  EDGEWOOD PARTNERS INSURANCE             Date:       January 11, 2008
    CENTER, a California corporation; DAN   Time:       9:00 a.m.
18  R. FRANCIS; JOHN G. HAHN;               Dept:       Courtroom 2, 17th Floor
    ANDREW ("WALLY") BROWN, JR.;
19  BRIAN F. QUINN; NEIL R. COHN;
    CAROLANN COHN; MICHAEL J.
20  BROWN; STEPHEN HAUSE; LAURA J.
    WICK; JAMES C. HALBLEIB;
21  LAURINDA ("LAURIE") A. MARTIN;          **PUBLIC VERSION**
    ERIC CHUA; GEORGE J. PETTY;
22  LINDA SOO HOO; ROBERT E. DUTTO;
    SUSAN M. ENGLISH; DON J.
23  JOHNSON; ALLEN L. AMOS;
    WILLIAM ("BILL") PHILLIPS, JR.;
24  DIRCK ("RICK") R. STINSON; ROBERT
    ("BOB") D. ELLSWORTH; ROBERT H.
25  WATKINS; PAUL H. WAGENER;
    SHANDRANETTE MIDDLETON,
26
                     Defendants.
27

28

                                            O'Leary Decl.; Gallagher v. EPIC,
4180812.1                                   Case No. 07-CV-06418-JSW

I, SIOBHAN O'LEARY, hereby declare as follows:

1.     I am presently employed at Edgewood Partners Insurance Center ("EPIC") as an Assistant Account Manager. I make this declaration of my own personal knowledge, and if called upon to do so, I could and would testify to the matters set forth herein.

2.     In January 2001, I was hired by Arthur J. Gallagher & Co. ("Gallagher") as an Assistant Account Manager. Over the last few years, I had become increasingly unhappy working at Gallagher. I felt that there were too many rules, regulations and "professional standards" being imposed on employees, and the manner in which we accomplished our work. The effect of these rules generally was to make the atmosphere at the office less personal and less enjoyable. In addition, I was very dissatisfied with my compensation.     **REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

3.     I was also concerned that Gallagher had     **REDACTED**

**REDACTED**

**REDACTED**               I was concerned that this trend might place the security of my job at Gallagher in jeopardy.

4.     On the morning of Friday, December 7, 2007, I attended a meeting at Gallagher's San Ramon office. In that meeting, I learned for the first time that Wally Brown, Brian Quinn, and Michael Brown had decided to resign their positions at Gallagher. Prior to that meeting, I had heard no rumors of their intent to resign. Nor had I ever heard of EPIC, the company where they were going. Their announcement came as a complete surprise to me.

5.     After the meeting, I approached both Wally Brown and Brian Quinn to wish them good luck. Wally and Brian had always been good bosses to me, and I felt a strong bond of loyalty to them, as did many others in Gallagher's San Ramon office. I realized almost immediately after the meeting that my allegiance was to these two men, and not to Gallagher as a company, in part because of the family atmosphere that they had cultivated in the San Ramon office. Because I respected Wally's and Brian's leadership and wanted to continue to work with

- 1 -

O'Leary Decl.; <u>Gallagher v. EPIC</u>,
Case No. 07-CV-06418-JSW

4180812.1

1    them, I asked Brian Quinn whether there might be an opportunity for me to work at EPIC, too.

2    He was very clear that he could not speak to me about employment opportunities there, but he

3    gave me a phone number of Mary Smith, Director of Human Resources at EPIC.

4            6.      I worked only a half-day on Friday, and when I went home that afternoon, I

5    contacted Mary Smith and told her that I was interested in seeking employment at EPIC. I also

6    discussed the matter with my sister, Louanne Sweeney, who was also an employee at Gallagher.

7    Eventually, Ms. Smith arranged for Louanne and me to interview with EPIC the next day,

8    Saturday, December 10, 2007. At no point did any former Gallagher employee attempt to solicit

9    me to leave Gallagher for EPIC.

10            7.      I interviewed at EPIC with Sarah Cox at approximately 2:00 p.m. on

11    Saturday afternoon. During the interview process, I told Ms. Cox how much money I was

12    making at Gallagher. Ms. Cox gave me information about EPIC and described its position as a

13    new company, including its recent acquisition of another insurance brokerage firm. I was excited

14    about the idea of working at the company, and about the opportunity to continue working with my

15    colleagues, many of whom had by this point already decided to join EPIC. I received a non-

16    binding offer letter that included a significant increase in salary, a signing bonus, and a better

17    benefits package, which I signed immediately.

18            8.      I returned to work at Gallagher at 6:00 a.m. on Monday, December 10,

19    2007. When I arrived at the Gallagher office, I found that there were security guards at the

20    building who refused to grant me and others access to the building until certain managers arrived

21    from other Gallagher offices. That morning, I attended a meeting convened by Gallagher's

22    Western Region Chairman, James McFarlane. My understanding was that the purpose of the

23    meeting was to                **REDACTED**

24    Yet Mr. McFarlane failed to address my concerns; in fact, he openly        **REDACTED**

25                    **REDACTED**

26            **REDACTED**                                His statements at the meeting only

27    confirmed my decision to accept a position at EPIC.

28            9.      I submitted my resignation to my supervisor at Gallagher, Gabrielle

4180812.1                            - - 2 - -        O'Leary Decl. ; <u>Gallagher v. EPIC</u>,
                                                      Case No. 07-CV-06418-JSW

1    Simpson, that morning after the meeting.  Ms. Simpson asked if I would be willing to stay until

2    the end of the week to help run the office, and I agreed to do so.  I began work at EPIC the

3    following Monday, December 17, 2007.

4            10.     Before leaving Gallagher, I retrieved some personal e-mails and pictures

5    from my computer, which I sent to a personal e-mail account.  None of the materials that I took

6    with me contained any information about Gallagher clients, insurance policies, proposals, or other

7    similar materials.  I also did not copy, delete, or destroy any information at Gallagher or anything

8    that contained any information about Gallagher clients, policies, proposals, or other similar

9    materials, other than documents that I threw away when I was cleaning out my desk prior to

10   leaving Gallagher.  Most of these documents were old certificate information.  I also received

11   very clear instructions from Ms. Cox during my interview not to take any confidential

12   information when I left Gallagher, and I followed those instructions.

13           11.     Since coming to work at EPIC, I have not seen anyone using confidential

14   Gallagher information.

15           12.     I have not solicited or encouraged any Gallagher employees to seek

16   employment at EPIC.

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1180812 1

O'Leary Decl. ; Gallagher v. EPIC,
Case No. 07-CV-06418-JSW

1    13.    I make this declaration voluntarily.  I understand that it was not a condition

2  of my employment at EPIC to provide this declaration, and that I could have declined to do so

3  without suffering any adverse employment consequences.

4

5    I declare under penalty of perjury under the laws of the State of California and the

6  United States that the foregoing is true and correct.

7    Executed January 2 , 2008 in San Ramon, California.

8

9

10

11    By: _____
                SIOBHAN O'LEARY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4180812 1

- - 4 - -

O'Leary Decl. ; Gallagher v. EPIC,
Case No. 07-CV-06418-JSW