# EXHIBIT 50

```
 1  JEROME C. ROTH (SBN 159483)
    MARTIN D. BERN (SBN 153203)
 2  MALCOLM A. HEINICKE (SBN 194174)
    MUNGER, TOLLES & OLSON LLP
 3  560 Mission Street
    Twenty-Seventh Floor
 4  San Francisco, CA  94105-2907
    Telephone:   (415) 512-4000
 5  Facsimile:   (415) 512-4077

 6  Attorneys for Defendant
    EDGEWOOD PARTNERS INSURANCE CENTER
 7
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC., a California Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; DAN R. FRANCIS; JOHN G. HAHN; ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; NEIL R. COHN; CAROLANN COHN; MICHAEL J. BROWN; STEPHEN HAUSE; LAURA J. WICK; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; SHANDRANETTE MIDDLETON,<br><br>Defendants. | CASE NO. 07-CV-06418-JSW<br><br>DECLARATION OF PAUL WAGENER<br><br>Judge:  Hon. Jeffrey S. White<br>Date:   January 11, 2008<br>Time:   9:00 a.m.<br>Dept:   Courtroom 2, 17th Floor<br><br>**PUBLIC VERSION** |

4173770.1

P. Wagener Decl.; Gallagher v. EPIC, Case No. 07-CV-06418-JSW

I, Paul Wagener, declare as follows:

1. I am employed at Edgewood Insurance Partners Center ("EPIC") as a Producer. I make this declaration of my own personal knowledge, and if called upon to do so, I could and would testify to the matters set forth herein.

2. After serving 23 years in the United States Marine Corps, I began working in the insurance brokerage business in 1977. During these years, I have worked at several different agencies, including my own firm Wagener-Trask, Valley Federal Savings & Loan, Frank B. Hall / Aon, Arthur J. Gallagher, and now EPIC.

3. I was employed as a Producer at Arthur J. Gallagher & Co. from 2001 until recently, when I resigned my position and accepted a position with EPIC.

4. I understand that Gallagher has asserted in this litigation, in which I am named as a defendant, that the recent departure of 49 employees from Gallagher was a carefully planned and orchestrated conspiracy. This is not correct to the best of my knowledge.

5. After a staff meeting on December 7, 2007, Wally Brown and Brian Quinn announced that they were resigning their positions at Gallagher. I was present at that meeting, which was the first time that I heard any information whatsoever about their departure from Gallagher to EPIC. Like many of the people at the staff meeting, some of whom were shocked and even cried after the meeting, I was surprised by the announcement.

6. After learning of Wally Brown's and Brian Quinn's resignation, I sought and obtained a phone number for EPIC from another broker in the office, and telephoned to determine whether there were any employment opportunities there for me. I spoke with Mary Smith, who arranged an interview for me later that day. At EPIC, I met with the founders, Dan Francis and John Hahn, for a few minutes each. I also learned about the company and its business model, and shared with them the size of my book of business. I returned to EPIC on the next day to interview with its General Counsel, Dan Crawford. I received and signed a non-binding offer of employment at that time.

7. I took the weekend to make my decision whether to leave Gallagher for EPIC. I made my decision to accept EPIC's offer, and to leave Gallagher, on Monday morning,

4173770.1     - 1 -     P. Wagener Decl.; Gallagher v. EPIC, Case No. 07-CV-06418-JSW

December 10, 2007, and communicated my decision in writing to Gallagher. During the time between Wally Brown's and Brian Quinn's announcement, and my decision to resign on December 10, 2007, I was not solicited by anyone to accept employment with EPIC.

8.  My decision to resign from Gallagher was based on several reasons, including an assessment of my prospects for continuing work under new management at Gallagher. I am 74 years old, and work almost entirely from home. **REDACTED**
**REDACTED**
**REDACTED**  I also had a strong loyalty to Wally Brown and Brian Quinn for letting me work at home on my own terms, which did not include expanding my book of business or meeting increasing sales quotas. Finally, I was displeased with the direction that Gallagher was taking in general, which included **REDACTED**
**REDACTED**

9.  Prior to starting at EPIC, I was informed that I should not take or retain any Gallagher materials with me when I started work at EPIC. Because I generally work from home, I gathered all computers, files and calendars and gave them to Dan Crawford for return to Gallagher. Prior to returning the two computers (one of which was old and had not been used for a long time), I removed some personal items from my computer, including some photographs, a eulogy for my mother, a Christmas letter and a list used by my wife for a philanthropic organization at which she volunteers. I only used the computer to check email, and not for other work functions. In fact, I did not have access to electronic client files on the Gallagher system. Thus, I did not retain any materials belonging to Gallagher when I resigned and began work at EPIC.

10. I had an office at Gallagher, but because I was only in the office about once per month, I did not keep very much there. In fact, the small number of items I kept at the office had been moved by Gabrielle Simpson and myself on the morning of December 7, 2007 to a new office that had windows, at my request, because I found the other office claustrophobic. After resigning on Monday morning, I did not take any Gallagher materials from my office.

11. Subsequently, I conducted a second, scouring search of my home for any

remaining Gallagher materials. I found some unused notepads, old correspondence, and some more recent correspondence that I had discarded to my bin for shredding. I collected these materials and turned them in to counsel for EPIC for return to Gallagher.

12. After joining EPIC, I sent a "tombstone" message to my clients informing them of my move to EPIC. As I received emails asking me to call, or direct calls from clients, I explained that I had moved to EPIC. I have worked with most of my clients for many years. In the case of my two largest clients, I have worked with them for 29 and 30 years respectively. Other clients of mine are personal friends. Therefore, it did not surprise me when they indicated that they wanted me to continue to work on their accounts and quickly provided Broker of Record letters. Indeed, except for two very small clients, my entire book of business had been acquired before I joined Gallagher in 2001.

13. When I moved from Aon to Gallagher in 2001, one of my longstanding clients sent a letter, attached as Exhibit A, to The Hartford. This letter was unsolicited by me, and I only learned about it after the fact when it was sent to me by an employee of The Hartford.

14. At no point in time did I solicit any employee of Gallagher to leave the employment of that company in order to come to work at EPIC.

15. I make this declaration voluntarily. I understand that EPIC has not required me to provide this declaration as part of my job, and that I could have declined to do so without suffering any adverse career consequences.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration is executed this 3d day of January, 2008 in San Ramon, California

By: _____
PAUL WAGENER

4173770.1

-- 3 --

P. Wagener Decl.; Gallagher v. EPIC, Case No. 07-CV-06418-JSW

# EXHIBIT A

JUL 09 '01 12:57 FR THE HARTFORD     916 362 1161 TO 18316858981     P.01/01

**Fresno Valves & Castings, Inc.**
7736 East Springfield Ave.
P.O. Box 40  Selma, CA 93662-0040
(559) 834-2511  Fax (559) 834-2017
www.fresnovalves.com



June 11, 2001

Carolyn Unger, Underwriting Manager
The Hartford
P.O. Box 15277
Sacramento, CA  95851-0277

Dear Carolyn,

As you may be aware, Fresno Valves & Castings, Inc. utilizes Hartford for virtually all of its insurance coverage and has done so for many years. We value our relationship with Hartford and we have every intention of continuing that relationship in the future. We have held a similar relationship with our insurance broker, Mr. Paul Wagener, who recently discontinued his relationship with AON Risk Services, Inc. in favor of relationship with Arthur J. Gallagher & Co. Mr. Wagener has been Fresno Valves & Castings, Inc.'s insurance broker for twenty-two years and he is considered to be a valued and dedicated advisor for our Company.

In our opinion, our insurance relationship is with Paul Wagener and not with AON who was the broker of record when our insurance policies recently renewed. Based on the nature and scope of the services provided to our Company, we believe it is appropriate for Arthur Gallagher to be compensated for the services they are now providing to us in connection with the insurance coverages being provided by Hartford.

Accordingly, we would like to request that Hartford cancel our existing policies as of July 31, 2001, through which AON is being compensated as the broker of record. We would like those policies rewritten at the existing rate structure effective August 1, 2001 for a twelve-month policy period and to consider Arthur Gallagher as the broker of record on those policies.

We would greatly appreciate your approval of the above request. If you should have any questions, comments or concerns, please do not hesitate to contact me.

Sincerely,

Kevin C. Follansbee
Chief Financial Officer

** TOTAL PAGE.01 **