PAUL, HASTINGS, JANOFSKY & WALKER LLP
BRADFORD K. NEWMAN (SB# 178902)
bradfordnewman@paulhastings.com
STEPHEN N. YANG (SB# 142474)
stephenyang@paulhastings.com
SARJU A. NARAN (SB# 215410)
sarjunaran@paulhastings.com
SHANNON S. SEVEY (SB# 229319)
shannonsevey@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Attorneys for Plaintiffs
Arthur J. Gallagher & Co., Inc. & Arthur J. Gallagher & Co.
Insurance Brokers of California, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; et al.,<br><br>Defendants. | CASE NO. C 07-06418 JSW<br><br>**DECLARATION OF KEN JOHNSON IN SUPPORT OF PLAINTIFF ARTHUR J. GALLAGHER & CO., INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER, EVIDENCE PRESERVATION ORDER, EXPEDITED DISCOVERY ORDER, AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION** |

**REDACTED**

Case No. C07 06418 JSW

DECLARATION OF KEN JOHNSON

I, Ken Johnson, declare:

1. I am currently employed as an Area Vice President in the San Francisco office of Arthur J. Gallagher & Co., Insurance Brokers of California, Inc., a division of A.J. Gallagher & Co. ("Gallagher"). I have worked for Gallagher for approximately ten years. I have personal knowledge of the facts set forth in this Declaration, and if called as a witness, I would and could testify to the facts stated herein.

2. While he was at Gallagher, I regularly worked and interacted with Jim Halbleib. In particular, I worked with Mr. Halbleib for approximately the last five years on the account Gallagher maintains with its client             which was one of the biggest accounts Gallagher assigned to Mr. Halbleib and me during his employment, and which generates approximately         in annual revenue for Gallagher. I also consider Mr. Halbleib to be a close, personal friend of mine.

**EPIC's contacts with**

3. On December 14, 2007, I spoke with             , who informed me that on or about December 12, 2007, Mr. Halbleib and Dan Francis of EPIC met with

4. In my experience, it is very difficult to obtain a meeting with these representatives, since they are high-level employees that do not agree to meet with everyone who requests a meeting. In my experience, these representatives also do not initiate meetings with insurance brokerage firms, but instead only agree to meet with insurance brokerage firms who actively seek their attention.

5. To my knowledge, the identity of the specific individuals within             listed above, who make decisions regarding             is not publicly known. Instead, to arrange a meeting with             Mr. Halbleib, who worked with these             while at Gallagher, would have needed to use the knowledge he gained as a Gallagher employee regarding the

-1-    DECLARATION OF KEN JOHNSON

Case No. C07 06418 JSW

from Gallagher to EPIC.

6. When I spoke to _____ on December 14, 2007, he informed me that, during EPIC's December 12, 2007 meeting with _____, EPIC attempted to convince _____ to transfer their business from Gallagher to EPIC, but that _____ indicated it would not do so.

### Jim Halbleib's Contacts With Me Since EPIC's December 12, 2007 Meeting With

7. Since EPIC's December 12, 2007 meeting with _____, the nature of my conversations with Mr. Halbleib has changed significantly. Before this meeting, but after Mr. Halbleib left Gallagher, Mr. Halbleib and I did not discuss work-related matters in our conversations. However, after this meeting, three conversations stand out in my mind as being different.

8. In the late afternoon of December 14, 2007, as I was driving home from work, I received a telephone call from Mr. Halbleib on my cellular telephone. After exchanging pleasantries, Mr. Halbleib stated, "I'm not trying to solicit you; this is just a conversation between friends." Mr. Halbleib then proceeded to tell me about EPIC, stating that the founders of EPIC are very "smart," that they are "great guys," that EPIC is not a "slave to Wall Street" since it is funded through private equity rather than being publicly traded, and that EPIC is a "great opportunity." Mr. Halbleib also stated that I "really should call Dan Francis," which I interpreted to mean that I should contact Mr. Francis to discuss my potential employment with EPIC.

9. During this conversation, Mr. Halbleib also indicated that he had been in contact with EPIC for some time, noting that he had discussed his contractual obligations to Gallagher with both EPIC's attorneys and his own. Mr. Halbleib stated that EPIC's attorneys informed him that, while he was not allowed to take Gallagher's data and could not solicit employees, he could talk to Gallagher clients who contacted him as long as he did not accept pay for the two-week notice period reflected in his employment contract with Gallagher.

10. Mr. Halbleib also acknowledged that he had recently met with _____, and that during that meeting, _____ had spoken highly of me. Mr. Halbleib also noted that

EPIC had a "great relationship" with United Kingdom insurance brokerage firm Jardine Lloyd Thompson UK Ltd. ("JLT"), with whom Gallagher has historically worked to provide for Asia-based insurance needs. Combined with the information I had already received from Mr. Wagener regarding EPIC's meeting with            , I interpreted Mr. Halbleib's reference to JLT to be an indication that EPIC was attempting to convince            to use it – rather than Gallagher – as its exclusive U.S.-based broker of record.

11. After listening to Mr. Halbleib discuss EPIC and            , and in response to Mr. Halbleib urging me to call Dan Francis, I told him that I hoped everything worked out well for him, but that I did not intend to leave Gallagher to accept employment with EPIC. Mr. Halbleib did not respond to this statement.

12. On or about December 20, 2007, I received another telephone call from Mr. Halbleib. Again emphasizing that he was not "soliciting" me and that we were only talking "as friends," Mr. Halbleib stated that I should call Dan Francis at EPIC and have a conversation with him. Mr. Halbleib then provided me with Mr. Francis' telephone number, noting that it "couldn't hurt" for me to speak with him. Although I accepted Mr. Francis' telephone number, I did not call him to discuss my potential employment with EPIC.

13. During this conversation, Mr. Halbleib also asked me several questions regarding            . Specifically, Mr. Halbleib asked if I had spoken with            how things were "going" between Gallagher and            and whether there were any problems between Gallagher and            of which I was aware. I recall Mr. Halbleib also asking me to tell him about my most recent meeting with            representatives. At the time, I believed Mr. Halbleib was asking me these questions both to determine what Gallagher knew about EPIC's December 12, 2007 meeting with            and also to see if there were any difficulties in the relationship between Gallagher and            that he and EPIC could exploit to convince            to transfer some or all of its business from Gallagher to EPIC.

14. At approximately 10:30 a.m. on December 28, 2007, as I was driving to a meeting I had previously arranged with            , I received another telephone call from Mr. Halbleib on my cellular phone, which I did not answer. In light of the fact that Mr. Halbleib's conduct

-3-    DECLARATION OF KEN JOHNSON

Case No. C07 06418 JSW

1  toward me seemed to change following EPIC's December 12, 2007 meeting with          ; I
2  believe that Mr. Halbleib called me at a time when he knew I was traveling to meet with this
3  client.
4      I declare under penalty of perjury under the laws of the United States and California that
5  the foregoing is true and correct. Executed this 4th day of January, 2008, in San Francisco,
6  California.

                                                           */s/ Ken Johnson*
                                                           Ken Johnson