1   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    BRADFORD K. NEWMAN (SB# 178902)
2   bradfordnewman@paulhastings.com
    STEPHEN N. YANG (SB# 142474)
3   stephenyang@paulhastings.com
    SARJU A. NARAN (SB# 215410)
4   sarjunaran@paulhastings.com
    SHANNON S. SEVEY (SB# 229319)
5   shannonsevey@paulhastings.com
    1117 S. California Avenue
6   Palo Alto, CA 94304-1106
    Telephone: (650) 320-1800
7   Facsimile: (650) 320-1900

8   Attorneys for Plaintiff
    Arthur J. Gallagher & Co., Inc. &
9   Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14  ARTHUR J. GALLAGHER & CO., a          CASE NO. C 07-06418 JSW
    Delaware Corporation, et al.,
15                                        **DECLARATION OF TOM GLAASER IN**
                Plaintiff,                **SUPPORT OF PLAINTIFF ARTHUR J.**
16                                        **GALLAGHER & CO., INC.'S MOTION**
        vs.                               **FOR TEMPORARY RESTRAINING**
17                                        **ORDER, EVIDENCE PRESERVATION**
    EDGEWOOD PARTNERS INSURANCE           **ORDER, EXPEDITED DISCOVERY**
18  CENTER, a California corporation; et al.,  **ORDER, AND ORDER TO SHOW CAUSE**
                                          **RE ISSUANCE OF PRELIMINARY**
19              Defendant.                **INJUNCTION**

20

21

22

23

24                      **REDACTED**

25

26

27

28

                                              DECLARATION OF TOM GLAASER

1    I, Tom Glaaser, declare:

2        1.    I am currently employed as Assistant Vice President, Risk Management by Arthur

3    J. Gallagher Risk Management Services Inc.  I have personal knowledge of the facts set forth in

4    this Declaration, and if called as a witness, I would and could testify to the facts stated herein.

5        2.    I have been informed that in connection with the lawsuit between Gallagher and

6    EPIC, that departed Gallagher employee Neil Cohn has testified under oath, with regard to his file

7    access on 12/6 and 12/7, that:

8

9

10

11

12

13

14        3.    I have reviewed the 13 page file access list attached hereto as Exhibit A, which I

15    have been informed was submitted in similar form as Exhibit J to the Declaration of Jim

16    McFarlane as part of Gallagher's moving papers.  I am informed that Gallagher's forensic expert

17    obtained this access data through an examination of the Gallagher computer formerly used by

18    Neil Cohn, as well as certain server logs.

19        4.    On December 7, 2007, at approximately 12:06 p.m., Neil Cohn emailed me 31

20    documents related to then-Gallagher client SRAM Corporation.  Specifically, he emailed me the

21    following specific files:

22

23

24

25

26

27

28

**DECLARATION OF TOM GLAASER**

Case No.  C07 06418 JSW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.      The suggestion that Mr. Cohn's file access as reflected on Exhibit A relates to sending me the above-referenced files is completely inaccurate for several reasons.  In order for Mr. Cohn to have located these specific files, or any other client file maintained by Gallagher out of its San Ramon office, Cohn would not have needed to engage in the file access reflected in Exhibit A.

6.      None of the SRAM documents sent to me are specifically listed in the 13 page Exhibit of his access.

7.      As a preliminary matter, most, if not all of the information I requested he furnish related to SRAM would have been readily accessible in a master physical file for SRAM and would not have required any kind of electronic searching whatsoever.

8.      Second,

-2-      **DECLARATION OF TOM GLAASER**

1

2

3      9.    Third, for purposes of the SRAM issue for which I interfaced with Mr. Cohn, there

4    would have been absolutely no need to look at any documentation for any other account other

5    than SRAM.

6      10.    Fourth, some of the listed files accessed for SRAM, like the

7

8         have no bearing on the specific issue for which I requested certain SRAM documents.

9    Ironically, I requested information concerning SRAM's Taiwan location, and although Mr. Cohn

10    also accessed the       file for SRAM-Taiwan, he did not send me that file.

11      11.    Fifth, a review of the SRAM files he accessed indicates he did not access that

12    many SRAM files related to my issue, and in fact, accessed other SRAM files that have nothing

13    to do with the issue.   Further, after he sent me his email at approximately 12:06 pm on December

14    7, 2007, I see further access to client files, including

15                                        accessed at 1:00 pm (page 11 of the

16    Exhibit). This information was ironically sent to me in the form of email attachments at 12:06

17    p.m., but was not reflected as having been accessed on Exhibit A by Mr. Cohn until after Mr.

18    Cohn sent the email to me.   This file contains a comprehensive overview of all aspects of

19    insurance for SRAM serviced by Gallagher and according to Exhibit A was accessed by Mr.

20    Cohn was a reason unrelated to any request by me since he had already sent me the data.

21      12.    The SRAM documents accessed on Exhibit A would be critical to Mr. Cohn's

22    ability to continue serving the SRAM Account in short order immediately after leaving

23    Gallagher's employ. Further, many of the other Gallagher client documents accessed in Exhibit A

24    would be critical to ongoing servicing of those accounts once Mr. Cohn left Gallagher's employ.

25    For example, on Page 6, significant quantities of critical client information for Gallagher

26    customer Hall Equities were accessed.  These documents contain

27                                                        which

28    would be necessary for continuity in serving that client assuming they executed a BOR letter

1   immediately after Mr. Cohn left Gallagher's employ.  Another example from Exhibit A are the

2   : applications accessed on page 6 of Exhibit A.  These documents have no bearing

3   on the SRAM issue over which I was interfacing with Mr. Cohn that week, and would be typical

4   of industry documents needed to continue acting as an insurance broker for current and future

5   clients.

6        13.   Moreover the files Mr. Cohn accessed on Exhibit A that were either personal in

7   nature or related to other customers were, in most instances, very specific individual documents

8   or information.  Further, the nature of the files and the way in which they were accessed at the

9   same time do not give the appearance of having been selected randomly or as part of a focused

10  search for the SRAM documents I requested.  Evidence of a progressive focus typically seen in a

11  search (i.e. SRAM-Taiwan related documents) is completely absent from the access of files

12  reflected in the Exhibit.

13       14.   Based on what I describe above, as well as additional aspects of the file access as

14  compared to what he and I were interfacing on, I view Mr. Cohn's mention of our interaction on

15  the SRAM issue as a cover story to try and explain away the file access reflected on Exhibit A.  I

16  do not regard the access of SRAM documents reflected on Exhibit A as having been the

17  necessary, reasonable or probable result of my request for certain SRAM documents, nor the

18  produce of Mr. Cohn's searching of the specific SRAM documents he in fact sent me.

19

20       I declare under penalty of perjury under the laws of the United States and California that

21  the foregoing is true and correct.

22       Executed this 5 th day of January, 2008, in _Northbrook_, Illinois.

23  
24                                   Tom Glaaser

25

26

27

28

# EXHIBIT A

*REDACTED*