PAUL, HASTINGS, JANOFSKY & WALKER LLP
BRADFORD K. NEWMAN (SB# 178902)
bradfordnewman@paulhastings.com
STEPHEN N. YANG (SB# 142474)
stephenyang@paulhastings.com
SARJU A. NARAN (SB# 215410)
sarjunaran@paulhastings.com
SHANNON S. SEVEY (SB# 229319)
shannonsevey@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Attorneys for Plaintiffs
Arthur J. Gallagher & Co., Inc. & Arthur J. Gallagher & Co.
Insurance Brokers of California, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; et al.,<br><br>Defendants. | CASE NO. C 07-06418 JSW<br><br>**SUPPLEMENTAL DECLARATION OF JAMES G. MCFARLANE IN SUPPORT OF PLAINTIFF ARTHUR J. GALLAGHER & CO., INC.'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, EVIDENCE PRESERVATION ORDER, EXPEDITED DISCOVERY ORDER, AND ORDER TO SHOW CAUSE RE ISSUANCE OF PRELIMINARY INJUNCTION** |

**REDACTED**

Case No. C 07 06418-JSW

SUPPLEMENTAL DECLARATION OF JAMES G. MCFARLANE

I, James G. McFarlane, declare:

1. I am currently employed as the Chairman, Western Region of Arthur J. Gallagher Risk Management Services and Arthur J. Gallagher & Co. Insurance Brokers of California, Inc., which are divisions of Arthur J. Gallagher & Co. ("Gallagher"). I have personal knowledge of the facts set forth in this Supplemental Declaration, and if called as a witness, I would and could testify to the facts stated herein.

### Additional Customers Have Transferred Business To EPIC Since Gallagher Filed Its Complaint And Request For TRO

2. As of December 20, 2007, the date on which Gallagher filed its Complaint and Motion for Temporary Restraining Order, Gallagher was aware of Broker of Record ("BOR") letters reflecting that 31 Gallagher clients, representing more than $4 million in revenue, had transferred their business from Gallagher to EPIC in the days following the mass departure of employees to EPIC.

3. Since December 20, 2007, Gallagher has continued to receive BOR letters reflecting the transfer of business from Gallagher to EPIC. In total, Gallagher has received BOR letters reflecting that since December 10, 2007, approximately 107 customers and more than 345 insurance policies, covering approximately $8.0 million in revenue, has been transferred from Gallagher to EPIC in a span of only weeks. Attached hereto as Exhibit A are true and correct copies of the additional BOR letters Gallagher received beyond those attached to my original declaration.

### Declarations Submitted By Wally Brown And James Wells

4. I have reviewed the declarations submitted by Wally Brown and James Wells in connection with the Opposition papers filed by EPIC. I know James Wells to be an acquaintance of Wally Brown.

5. Based on my review of these declarations, it appears that the defendants in this case are trying to convince the Court that an insurance broker does not need to possess any non-public information in order to immediately leave a company and submit a bid proposal to a former client.

Case No. C07 06418 JSW -1- SUPPLEMENTAL DECLARATION OF JAMES G. MCFARLANE

1  6. As I explained in my original declaration, in order to prepare an insurance proposal to a client, an insurance broker needs to possess and analyze significant amounts of non-public customer data regarding such items as the client's history of claims and losses, payroll data, property ownership and limits, existing coverages, policy expiration dates, deductible rates, commission levels, and more. The process of compiling and analyzing this data can takes significant time and effort (days, if not weeks) and it would be impossible to prepare and present a detailed proposal containing the analysis of existing coverages, renewal options, and the advantages and disadvantages of each proposed renewal policy without this information.

7. A good example of this is explained in the declaration of           , the president of Gallagher client           . I have reviewed           declaration, and I agree with           assessment that Mr. Hause could not have presented the detailed proposal discussed in           declaration without having access to the data regarding           Workers' Compensation claims and losses, liability limits, sales history, payroll data, property limits, etc., that           never provided to EPIC.

8. The declarations of Mr. Brown and Mr. Wells also appear to attempt to convince the Court that the execution of a Broker of Record letter does not cause the former broker to lose commissions. This is misleading. While the execution of a BOR letter does not, in itself, transfer commissions, and cause an insurance broker to lose commissions and revenues from policies that have already been initiated or renewed, any policies that are renewed after the BOR letter is executed would generate commissions for the new broker (EPIC), not the old broker (Gallagher).

9. There are many other inaccuracies in Mr. Brown's Declaration, but I will wait for a later time to address.

**Eric Chua**

10. I have reviewed the declaration submitted by Eric Chua. In his declaration, Eric Chua states that he accessed his Workers' Compensation client list, referenced in my original declaration as "**Accounts for Workers Comp Dept..xls**," because I requested that he provide this document to me.

11. Mr. Chua did not provide this document to me on Monday, December 10, 2007, or on any other day. Nor am I aware of Mr. Chua providing this document to any other Gallagher representative before he resigned without notice that morning.

12. In addition, I neither requested nor received any of the other files that Exhibit V to my original declaration indicates Mr. Chua accessed the morning of his resignation, such as the other 5 files that Mr. Chua accessed between 7:01:52 a.m. and 7:02:48 a.m. on December 10, 2007.

13. Attached hereto as Exhibit C is a true and correct copy of an email, dated December 8, 2007, which Gallagher located in the corporate email account it assigned to Eric Chua during his employment with Gallagher. In this email, which is dated the Saturday before his December 10, 2007 resignation, Chua purports to offer to assist with upcoming insurance policy renewals for the customers of Gallagher's San Ramon office, including customers to which he was not assigned.

14. In his declaration, Chua notes that the day before he sent this email, on December 7, 2007, Chua asked Brian Quinn about employment with EPIC, called EPIC Human Resources employee Mary Smith regarding employment with EPIC, and interviewed at EPIC.

**Gallagher's Proprietary And Trade Secret Data**

15. I understand from reading EPIC's opposition papers that EPIC contends that the information the former Gallagher employees accessed, copied, and took does not constitute confidential, proprietary, trade secret information. This is false. As I discussed in my original declaration, Gallagher develops and maintains a significant body of proprietary data, developed with significant time and expense, that is not generally known to the insurance industry or to competitors. This information, discussed at length in my original declaration, is valuable because it is kept secret, and if disclosed, would be of significant competitive value to competitors.

16. I am surprised that EPIC is taking this position in light of the data I am informed EPIC returned to Gallagher via courier on December 20, 2007, hours after Gallagher filed its lawsuit and request for immediate injunctive relief. As one example, the documents retained by Allen Amos following his resignation, which I am informed are attached to the declaration of Jim

Pagliai, contain detailed revenue information for existing prospective customers, as well as a specific description of the measures Gallagher intends to take – based on its proprietary analysis of client needs, revenues, and opportunities – to retain existing business and obtain new business. This information, like the remainder of the data I have reviewed and which the forensic evidence indicates the former Gallagher employees accessed in rapid fashion upon exiting Gallagher, is non-public, is valuable because it is maintained in secrecy by Gallagher and not disclosed to the insurance industry or to Gallagher's competitors, provides Gallagher with a competitive edge in that it enables Gallagher to identify and then meet the needs of current and prospective clients, and, if stolen by Defendants, would enable EPIC and its newly-hired employees to compete against Gallagher based on the information and analyses Gallagher invested substantial time and money developing.

17. The former Gallagher employees who resigned from Gallagher to join EPIC did not have permission to access Gallagher's computers and computers systems and the data contained therein for their own benefit (outside of the performance of their duties for Gallagher) or for the benefit of EPIC.

**Additional Expenses Of Former Gallagher Employees**

18. Attached hereto as Exhibit D are true and correct copies of additional expense reports submitted by former Gallagher employees Allen Amos, Molly Armstrong, Patricia Burdock, Kelly Cavagnulo, Elkie Craven, Sharon Daughtry-Honda, Robert Dutto, Robert Ellsworth, Susan English, Jim Hableib, Tammy Glaser, Steve Hause, Robin Herman, Don Johnson, Lisa Lucas, Laurie Martin, George Petty, William Phillips, Dennis Rodriguez, Linda Soo Hoo, Dirck Stinson, Colleen Varnica, Paul Wagener, and Robert Watkins prior to their resignations from Gallagher.

**Additional Documents**

19. Attached hereto as Exhibit E is an organizational chart for the employees who resigned from Gallagher's San Ramon and San Francisco offices to join EPIC.

20. Attached hereto as Exhibit F is a true and copy of an email sent by Linda Soo Hoo on September 14, 2007. This email shows that, by September 14, 2007, Quinn submitted a

"Dominant Priorities 2007 Final" spreadsheet to Gallagher manager, identifying 9 "Dominant Priorities" that were specific actions intended to help Gallagher accomplish annual Above Financial Targets and included employee development and retention, and minimal disruption from the San Ramon office location; Quinn identified himself and Wally Brown as the owner of 7 of the 9 Dominant Priorities including employee growth and retention, with Wick and Soo Hoo owning the remaining two. This document also speaks to client retention – a task Gallagher specifically assigned to Quinn, and 2008 priorities, for which Quinn, Wally Brown, Soo Hoo, and George Petty were substantially responsible.

    I declare under penalty of perjury under the laws of the United States and California that the foregoing is true and correct.

    Executed this 6th day of January, 2008, in Glendale, California.

                                                                                     _____
                                                                                      James G. McFarlane