JEROME C. ROTH (SBN 159483)
MARTIN D. BERN (SBN 153203)
MALCOLM A. HEINICKE (SBN 194174)
JEFFREY E. ZINSMEISTER (SBN 235516)
Malcolm.Heinicke@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA  94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants
EDGEWOOD PARTNERS INSURANCE CENTER,
DAN R. FRANCIS & JOHN G. HAHN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ARTHUR J. GALLAGHER & CO., INC., a Delaware Corporation, ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC., a California Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>EDGEWOOD PARTNERS INSURANCE CENTER, a California corporation; DAN R. FRANCIS; JOHN G. HAHN; ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; NEIL R. COHN; CAROLANN COHN; MICHAEL J. BROWN; STEPHEN HAUSE; LAURA J. WICK; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; SHANDRANETTE MIDDLETON,<br><br>Defendants. | CASE NO.  3:07-CV-06418-JSW<br><br>**DEFENDANTS EDGEWOOD INSURANCE PARTNERS' CERTIFICATION RE: VOLUNTARY PREVENTATIVE MEASURES**<br><br>[SUBMITTED FOLLOWING AND IN CONNECTION WITH THE JANUARY 11, 2008 HEARING ON PLAINTIFFS' CONTESTED MOTION FOR A TEMPORARY RESTRAINING ORDER]<br><br>**The Honorable Jeffrey S. White** |

1    WHEREAS, on January 11, 2008, the Court heard oral argument on Plaintiffs'

2    Motion for a Temporary Restraining Order, Evidence Preservation Order, and Order To Show

3    Cause re Issuance of Preliminary Injunction; and

4    WHEREAS, through this submission, Defendant Edgewood Partners Insurance

5    Center ("EPIC") and the other Defendants do not concede that any form of injunctive or other

6    judicial relief is warranted or appropriate; instead, as set forth in their opposition papers,

7    Defendants submit that there is no legal basis for the issuance of a temporary restraining order or

8    the other extraordinary judicial relief sought by Plaintiffs (also referred to herein as "Gallagher"),

9    and they continue to respectfully urge this Court to deny Plaintiffs' request for such relief;

10    WHEREAS, per the Court's instructions at the hearing on Plaintiffs' motion for a

11    temporary restraining order, EPIC has prepared a list of preventative measures that it is willing to

12    take voluntarily to address some of the issues raised by Plaintiffs;

13    WHEREAS, also per the Court's instructions, EPIC has negotiated with Plaintiffs'

14    counsel over the terms of this voluntary certification;

15    WHEREAS, counsel for Plaintiffs has requested that his correspondence of

16    January 16, 2008 be attached to any submission to the Court and EPIC has attached a true and

17    correct copy of such letter hereto as Exhibit A;

18    WHEREAS, EPIC has considered the positions asserted by Plaintiffs in drafting

19    this voluntary certification;

20    EPIC hereby certifies and represents to the Court that, unless a different time

21    frame is specified below, it is presently undertaking the following voluntary measures, and will

22    continue to do so until the Court issues a dispositive ruling on Plaintiffs' claims (either on

23    summary judgment or after trial), or until any other resolution of the litigation:

24    (1)    Within seven (7) calendar days, EPIC will complete its search for Gallagher

25    property, documents, or data that may have been taken or retained by former

26    Gallagher employees at the time they left Gallagher, including but not limited to

27    data stored on personal electronic devices, portable hard drives and home

28    computers.  Furthermore, EPIC will not knowingly retain, and will instead return

- 1 -

4270076.4

1         to Gallagher within seven (7) days of discovery any Gallagher property,

2         documents, or data, and all copies thereof[1], that were taken by any former

3         Gallagher employee now employed by EPIC, or retained in their possession, when

4         they left Gallagher to join EPIC;

5      (2)     EPIC will not access, retrieve, copy, transmit or disseminate any Gallagher

6         property, documents, or data, and all copies thereof, that EPIC discovers was taken

7         by any former Gallagher employee now employed by EPIC, or retained in their

8         possession, when any such former Gallagher employee left Gallagher to join

9         EPIC;

10     (3)     EPIC will not destroy, erase, or otherwise modify, or cause or permit anyone else

11        to destroy, erase, or otherwise modify any Gallagher property, documents, or data,

12        and all copies thereof, that EPIC discovers was taken by any former Gallagher

13        employee now employed by EPIC, or retained in their possession, when they left

14        Gallagher to join EPIC;

15     (4)     Defendants who are former Gallagher employees and who signed Gallagher's

16        Executive Agreements (described in paragraph 154 of the Complaint) will not

17        contact any current Gallagher employee in order to solicit them to join EPIC.

18        EPIC will not hire individuals who are working for Gallagher unless they first

19        provide a sworn declaration stating that they were not solicited to join EPIC by

20        any former Gallagher employee;

21     (5)     Defendants who are former Gallagher employees will not solicit business from any

22

[1] EPIC has and will provide certain media to its expert consultants, who have imaged or will image these materials to preserve evidence and conduct forensic analyses. To the extent this media contains any Gallagher data, such material will be copied in a forensically sound manner that reflects and preserves all metadata. If the media is owned by Gallagher, it will be returned to Gallagher after deletion of all personal information, including but not limited to medical records or related information. EPIC's outside experts and counsel may retain one copy of any original media returned to Gallagher, to be used for litigation purposes only. Without conceding that such materials in any way represent confidential or trade secret material, EPIC will treat such documents as "Highly Confidential - Attorney's Eyes Only" as that term is set forth in Paragraph 7.2 of the Northern District of California's sample form of Protective Order, and will destroy these copies at the conclusion of this litigation.

DEFENDANT EPIC'S VOLUNTARY
CERTIFICATION; CASE NO. 3:07-CV-06418-JSW

4270076.4

entity that was a client of Gallagher as of December 7, 2007; provided, however, (a) Defendants who are former Gallagher employees may provide such clients with "tombstone announcements" or similar communications stating their affiliation with EPIC and general information about EPIC; and (b) Defendants who are former Gallagher employees are not precluded from discussing, seeking and accepting business from Gallagher clients who respond to such announcements or communications, or otherwise initiate contact with EPIC;

(6)    Beginning January 15, 2007, and continuing until the Court rules upon Gallagher's pending Motion for a temporary restraining order, EPIC has been processing and will continue to process Broker of Record letters from new clients (including Broker of Record Letters referenced in paragraph 16 of the Declaration of Dan Francis In support of Opposition to Motion for Temporary Restraining Order) who previously were clients of Gallagher as of December 7, 2007, only when (a) an EPIC broker certifies in writing on the basis of personal knowledge that the client discussed doing business with EPIC or Defendants in response either to a tombstone announcement or similar communication, and (b) the new client certifies in writing that EPIC did not use or present to it any confidential Gallagher information in an effort to obtain a Broker of Record letter; and

(7)    EPIC will provide a copy of this Certification to all Defendants and inform them that they are expected to abide by its terms, and that failure to do so will be grounds for disciplinary action, including termination.

**SO CERTIFIED**.

Dated: January **17**, 2008

By: Daniel J. Crawford
General Counsel/Secretary
Edgewood Partners Insurance Center

- 3 -

DEFENDANT EPIC'S VOLUNTARY
CERTIFICATION; CASE NO. 3:07-CV-06418-JSW

4270076.4

# EXHIBIT A

**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
1117 S. California Avenue
Palo Alto, CA 94304-1106
telephone 650-320-1800 · facsimile 650-320-1900 · www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Frankfurt
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Tokyo
Washington, DC

(650) 320-1827
bradfordnewman@paulhastings.com

January 16, 2008

**VIA PDF EMAIL DELIVERY**

Martin Bern, Esq.
Munger, Tolles & Olson LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907

**Re:    Gallagher et al. v. EPIC et al.**

Dear Mr. Bern:

Thank you for your facsimile of today's date, setting forth EPIC's proposal to voluntarily make certain certifications to the Court in return for Plaintiffs withdrawing the pending Motion for Temporary Restraining Order. And thank you for meeting in person with me today at Max's Café for two hours. At your invitation, we provide Plaintiffs' counter-proposals to EPIC's verbiage. Plaintiffs remain hopeful that with regard to at least the first 5 items, the Parties can expeditiously land on a mutually agreeable stipulation that allows the Court to narrow the issues pending in connection with the request for injunctive relief.

As an initial matter, Plaintiffs are very concerned by Footnote 2 and Item 3 of your letter. Plaintiffs do not, and have never, consented to Defendants deleting any evidence related to this case. In Plaintiffs' Reply papers, it submitted an unrebutted expert declaration confirming that deletion of data off of a computer destroys meta-data that identifies, among other things, when the data at issue was first placed onto the computer and from what source. The Transcript from the January 11, 2008 hearing on Plaintiffs' Motion for TRO reflects Defendants made the following representation to the Court in the context of discussing its alternative proposed injunction:

> MR. WAGSTAFFE: It was scaled, your Honor. There was return of property, certify returned property; frankly, follow our obligation under Rule 26 *not to in any way destroy documents*. Those are given…. (Tr. 64)(Emphasis supplied.)

Plaintiffs respectfully request that you confirm whether any deletion has occurred.

Paul*Hastings*

Martin Bern, Esq.
January 16, 2008
Page 2

<u>Plaintiffs' Counter-Proposal to EPIC's Proposed Certification:</u>

(1) Within (5) calendar days, Defendants will complete their ongoing search
for Gallagher property, documents, or data that may be in the possession
of any former Gallagher employee now employed by EPIC, including but
not limited to, data stored on personal electronic devices, portable hard
drives and home computers.  Furthermore, Defendants will not knowingly
retain, and will instead return within 7 calendar days to Gallagher, any
Gallagher property, documents, or data, and all copies thereof[1], that were
taken by any former Gallagher employee now employed by EPIC, or
retained in their possession, when they left Gallagher to join EPIC;

(2) In connection with Paragraph 1 above, and to ensure no destruction of
evidence, Defendants shall make a forensically sound copy of all Gallagher
data in their possession that reflects and preserves all meta-data, and return
that copy to Gallagher, and shall not delete any data off of the original
computer media pending resolution of this action, but rather, deposit the
original computer media with Defendants' expert to hold in escrow
pending discovery pursuant to Footnote 1;

(3) Defendants shall certify the make and model of the computer media from
which the Gallagher data is being retrieved, how the Gallagher data was
accessed, removed and copied off of Gallagher's computer networks and
placed on the computer media (or if Hard Copy documents, the manner in
which they were taken off of Gallagher's premises), the date on which the
data was placed onto the computer media from which it is being retrieved,
the identity of any persons who accessed the data on the computer media,
whether any copies have been made (other than the copy returned to
Gallagher pursuant to this Paragraph), and whether any deletion of

---

[1] EPIC has provided certain media to its expert consultants, who have copied or imaged these materials
to preserve evidence and conduct forensic analyses.  To the extent this media contains any Gallagher
data, such material shall be copied in a forensically sound manner that reflects and preserves all meta-
data and returned to Gallagher within the above time-frame.  EPIC's outside experts and counsel may
retain one copy and the original media, pending discovery (during which time Plaintiffs' shall have the
right to inspect the media) and resolution of this action, to be used for litigation purposes only, and no
waiver or other argument shall be made by Defendants with respect to their retention of Gallagher data
for purposes of this litigation.  Without conceding that such materials in any way represent confidential
or trade secret material, EPIC will treat such documents as "Highly Confidential-Attorney's Eyes Only"
as that term is set forth in Paragraph 7.2 of the Northern District of California's sample form of
Protective Order, and that these copies will be returned to Gallagher at the conclusion of this litigation.

Paul*Hastings*

Martin Bern, Esq.
January 16, 2008
Page 3

Gallagher data has occurred at any time since the former Gallagher
employees left Plaintiffs' employ;[2]

(4) Defendants shall not use, access, retrieve, copy, transmit, disseminate,
destroy, erase, or otherwise modify, or cause or permit anyone else to do
the same, any Gallagher property, documents, or data, and all copies
thereof, that were taken by any former Gallagher employee now employed
by EPIC, or retained in their possession, when any former Gallagher
employee left Gallagher to join EPIC or thereafter;

(5) Pending trial in this matter, Defendants shall not directly or indirectly
induce any current Gallagher employee to leave Plaintiffs' employ, or in
any way interfere with the relationship between Plaintiffs and the
employee. EPIC will not hire individuals who are working for Plaintiffs
unless the employee in question first provides a sworn declaration to
Plaintiffs stating that they were not directly or indirectly induced to join
EPIC by any Defendant or those working on their behalf;

(6) Pending trial in this matter, Defendants, and those acting in concert with
them, will not solicit business from any entity that was an actual or actively
sought client of Gallagher as of December 7, 2007; provided, however, (a)
Defendants who are former Gallagher employees may provide such clients
with "tombstone announcements" stating their affiliation with EPIC; and
(b) Defendants who are former Gallagher employees are not precluded
from discussing, seeking and accepting business from Gallagher clients
who respond to such announcements or communications, or otherwise
initiate contact with EPIC, provided that (i) no former Gallagher employee
now employed by EPIC took any Gallagher data related to the customer;
and (ii) no former Gallagher employee now employed by EPIC pre-
announced his or her intent to leave Gallagher for EPIC to that client;

(7) Pending trial in this matter, and without prejudice to Gallagher seeking
damages related to the loss of business, EPIC will not process Broker of
Record letters from any entity that was an actual or actively sought client
of Gallagher as of December 7, 2007, unless Defendants certify that (a) the
customer contacted EPIC or Defendants in response to a tombstone

---

[2] We direct your attention to Page 68-69 of the Transcript:

THE COURT: [B]ut what about the proposal that's made about a certification    concerning
what was taken… I don't want to do it piecemeal… You could say, we propose in the discovery
plan that there is a certification under oath as to A, B, C, D which would be relevant;
discoverable, anyway. **So let's cut to the chase. We could follow it up with discovery, but I
think we can certainly start the process.** (Emphasis supplied.)

Paul*Hastings*

Martin Bern, Esq.
January 16, 2008
Page 4

announcement to explore potential business without solicitation by any former Gallagher employee, (b) no former Gallagher employee took any data from Gallagher relating to that client; (c) no former Gallagher employee pre-announced their departure for EPIC to that client; (d) no former Gallagher employee, or anyone acting on their behalf, used or presented any confidential Gallagher information to the customer; and (e) within the last 30 days of employment at Gallagher, no former Gallagher employee who was also an officer of Gallagher entertained the client;

(8) Within 10 calendar days, Defendants shall each personally execute, file with the Court and serve on all parties a Certification, under penalty of perjury, attesting to compliance with Items 1-7 above; and

(9) No Party shall admit liability or waive any claim or defense by entering into this Stipulation; no Party shall issue a Press Release concerning this Stipulation or divulge it to non-parties to this action.

We welcome your thoughts and hope to continue working towards a common understanding.

Sincerely,

Bradford K. Newman
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

BKN:cg

cc: James Wagstaffe
    Daniel Purcell