PAUL, HASTINGS, JANOFSKY & WALKER LLP
BRADFORD K. NEWMAN (SB# 178902)
STEPHEN N. YANG (SB# 142474)
SARJU A. NARAN (SB# 215410)
SHANNON S. SEVEY (SB# 229319)
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Attorneys for Plaintiffs
Arthur J. Gallagher & Co., Inc. &
Arthur J. Gallagher & Co. Insurance Brokers of California, Inc.

JEROME C. ROTH (SBN 159483)
MARTIN D. BERN (SBN 153203)
MALCOLM A. HEINICKE (SBN 194174)
JEFFREY E. ZINSMEISTER (SBN 235516)
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Defendants
EDGEWOOD PARTNERS INSURANCE CENTER, DAN R. FRANCIS & JOHN G. HAHN

March 24, 2008

The Honorable Joseph C. Spero
Magistrate Judge, U.S. District Court
Northern District of California
450 Golden Gate Ave.
Courtroom A, 15th Floor
San Francisco, CA 94102

RE: *Arthur J. Gallagher & Co., Inc., et al. v. Edgewood Partners Insurance Center, et al.*, Northern District of California Case No. 07-CV-06418-JSW (JCS)

Dear Magistrate Judge Spero:

  A dispute has arisen concerning whether California Code of Civil Procedure Section 2019.210 applies to this action. Defendants contend that it does; Plaintiffs argue that it does not.

  The parties have met and conferred in person on this matter, and hereby submit the following joint letter brief, in accordance with the Court's Notice of Reference and Order Re Discovery Procedures of January 15, 2008. At the parties' agreement, both sides exchanged their respective portions of the joint letter brief without first looking at the other side's portion. Also, at Plaintiffs' request, the parties agreed that Plaintiff may present its argument first, and that in the event any subsequent joint letter briefs are required, the parties will alternate as to which side will go first (*i.e.*, Defendants would present first next time, and so forth).
//
//

4715189.1

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: /s/ Martin D. Bern / JEZ
MARTIN D. BERN

Attorneys for Defendants
EDGEWOOD PARTNERS INSURANCE CENTER; DAN R. FRANCIS; and JOHN G. HAHN

KEKER & VAN NEST LLP

By: /s/ Daniel Purcell / JEZ
DANIEL PURCELL

Attorneys for Defendants
NEIL R. COHN; CAROLANN COHN; STEPHEN HAUSE; JAMES C. HALBLEIB; LAURINDA ("LAURIE") A. MARTIN; ERIC CHUA; GEORGE J. PETTY; LINDA SOO HOO; ROBERT E. DUTTO; SUSAN M. ENGLISH; DON J. JOHNSON; ALLEN L. AMOS; WILLIAM ("BILL") PHILLIPS, JR.; DIRCK ("RICK") R. STINSON; ROBERT ("BOB") D. ELLSWORTH; ROBERT H. WATKINS; PAUL H. WAGENER; and SHANDRANETTE MIDDLETON

KERR & WAGSTAFFE LLP

By: _____
ADRIAN J. SAWYER

Attorneys for Defendants
ANDREW ("WALLY") BROWN, JR.; BRIAN F. QUINN; MICHAEL J. BROWN; and LAURA J. WICK

PAUL, HASTINGS, JANOFSKY & WALKER LLP


By: _____
BRADFORD K. NEWMAN

Attorneys for Plaintiffs
ARTHUR J. GALLAGHER & CO., INC. and ARTHUR J. GALLAGHER & CO., INSURANCE BROKERS OF CALIFORNIA, INC.

KERR & WAGSTAFFE LLP


By:_____
      ADRIAN J. SAWYER

Attorneys for Defendants
ANDREW ("WALLY") BROWN, JR.; BRIAN F.
QUINN; MICHAEL J. BROWN; and LAURA J.
WICK

PAUL, HASTINGS, JANOFSKY & WALKER LLP


By: *[signature]*
      BRADFORD K. NEWMAN

Attorneys for Plaintiffs
ARTHUR J. GALLAGHER & CO., INC. and
ARTHUR J. GALLAGHER & CO., INSURANCE
BROKERS OF CALIFORNIA, INC.

## PLAINTIFFS' ARGUMENT

### A.  California Code Of Procedure §2019.210 Is Procedural – Not Substantive – And Therefore Cannot Be Applied In Federal Court

Federal courts resolving state law claims must apply federal procedural law and state substantive law. Hanna v. Plumer, 380 U.S. 460, 471-472 (1965). The U.S. Supreme Court defines procedure as "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." Id.; see also Funcat, 2007 WL 273949, at *3 ("[A] rule regulates procedure rather than substance if it encompasses 'the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them'").

California Code of Civil Procedure §2019.210 unequivocally states a rule of "judicial process." This statute governs the discovery process, and what disclosures must be made from a mandatory sequential standpoint – i.e. *before* plaintiffs can engage in this function of the judicial process. Cal. Civ. Proc. Code § 2019.210 ("[B]efore commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity []"). In satisfying this statute, a plaintiff does not improve its ability to prove the ultimate question at trial – whether the defendants used, disclosed, or otherwise misappropriated trade secrets, but instead simply gains the right to proceed to the next step in litigation – discovery.

Although the UTSA has been adopted in 45 states, the District of Columbia, the U.S. Virgin Islands, and soon New York, only California has instituted the procedural rule dictated by Code of Civil Procedure §2019.210. This demonstrates that California Code of Civil Procedure §2019.210 is not a substantive part of the UTSA, since, in all 44 other states (plus territories), a UTSA plaintiff litigates its substantive claim without first satisfying this procedural threshold. And as discussed below, even in California, the substance of a UTSA claim is not dependent on satisfying §2019.210's procedure.

Similarly, where California Code of Civil Procedure §2019.210 is inapplicable, defendants are not deprived of discovering the *substantive* information surrounding a plaintiff's trade secret claims through normal discovery, as 2019.210 is merely a state law procedure that must be satisfied before a *plaintiff* can commence discovery. As such, this statute governs procedure, not substantive law. Funcat, 2007 WL 273949 at *3 ("[2019.210] simply sets out a procedural pleading or identification threshold prior to the initiation of discovery – both purely procedural matters"); Proven Methods Seminars, LLC v. American Grants & Affordable Housing Institute, 2008 WL 282374, at *3 (§2019.210 is "a state *rule of civil procedure* that is inapplicable in federal court"); see also Carrasco v. Campagna, 2007 WL 81909, at *1 (N.D. Cal. 2007) ("[D]iscovery is *a procedural matter* governed in the federal courts by the [FRCP]. Thus, state discovery practices are usually irrelevant.") (emphasis added).

The California legislature implicitly acknowledged that §2019.210 is procedural in nature by placing this rule in its Code of Civil Procedure, while placing the substantive law – the

Uniform Trade Secrets Act ("UTSA"), in the California Civil Code. Waldecker v. Waldecker, 178 Cal. 566, 567 (1918) ("The Code of Civil Procedure is the place wherein the procedure to be followed in such actions is to be found.").

### B. Rule 26 Alone Controls the Timing of and Prerequisites to Discovery

In evaluating the applicability of a state procedural statute in federal court, the first and only question is whether a valid Federal Rule exists. Where it does, the state statute cannot be implemented, and no further analysis is required. Hanna, 380 U.S. at 471-472 ("It is true that both the Enabling Act and the Erie rule say, roughly, that federal courts are to apply state 'substantive' law and federal 'procedural' law, but from that it need not follow that the tests are identical. *When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided Erie Choice: the court has been instructed to apply the Federal Rule* and can refuse to do so only if the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions") (emphasis added); Proven Methods Seminars, 2008 WL 282374, at * 3, citing Vess, 317 F.3d 1097, 1102-1103 (9th Cir. 2003) ("*If a Federal Rule of Civil Procedure is valid under the Constitution and the Enabling Act, it applies according to its terms in all civil cases in federal district court*") (emphasis added).

At issue here is what information Plaintiffs must provide to Defendants before commencing discovery. That question is answered by Rule 26, which sets forth the exclusive list of information plaintiffs – in trade secret cases or otherwise – must provide before commencing discovery in federal court. FRCP Rule 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"), Rule 26(f) (setting forth the only subjects – such as the Rule 26(a)(1) disclosures, evidence preservation, etc. – that must be discussed prior to discovery), Rule 26(a)(1) (setting forth the list of subjects to be discussed before discovery, and allowing for modifications to this list only by stipulation or court order).

Were the Court to apply California Code of Civil Procedure §2019.210 here, it would be unilaterally grafting a state discovery procedure onto the Federal Rules – an invalid act of judicial legislation and an infringement of Congress' rule-making authority.

### C. Even Under Erie, California Code of Civil Procedure §2019.210 Should Not Apply In Federal Court

Both Defendants and the case upon which they rely – Computer Economics v. Gartner Group, Inc., 50 F. Supp. 2d 980 (S.D. Cal. 1999) – argue that §2019.210 should apply in federal court because it is a "substantive" statute that satisfies the two-part Erie test.

> [A]pplying the doctrine of *Erie* requires a two-step analysis. First, the court must determine whether the state rule conflicts with an applicable Federal Rule of Civil Procedure. If so, *principles of federal supremacy require the court to apply the Federal Rule rather than state law.* [Citing Hanna.] Otherwise, the court must analyze whether failure to apply the state law

would either significantly affect the outcome of the litigation or encourage litigants to file their actions in federal court. 50 F. Supp. 2d at 983 (emphasis added); Erie R.R. v. Tomkins, 304 U.S. 64 (1938).

Although the Erie test is inapplicable since California Code of Civil Procedure §2019.210 is procedural, not substantive, even under Erie, §2019.210 cannot apply in federal court:

### 1. §2019.210 Directly Conflicts With Rule 26 And Therefore Cannot Apply In Federal Court

California Code of Civil Procedure §2019.210 directly conflicts with Rule 26 in that it operates to delay discovery that would otherwise proceed in federal court. Funcat, 2007 WL 273949 *2 ("If Rule 26 applies, plaintiffs may go forward with the instant discovery. If §2019.210 applies, plaintiffs are prevented from pursuing discovery if the insufficiency of their §2019.210 statement is adversely determined. Here, application of §2019.210 would serve to prevent application of Rule 26, if defendant had its way"); Proven Methods Seminars, 2008 WL 282374 at *3 ("Applying state procedure is inappropriate especially where, as here, it has the effect of imposing an otherwise unmandated sequence to discovery.")

Notably, Computer Economics does not address the conflict between California Code of Civil Procedure §2019.210 (adding a procedural sequence to discovery) and Rule 26(d) (governing the timing of discovery in federal court). Instead, Computer Economics focused its analysis on Rule 26(c)(7) (governing protective orders) and Rule 26(b)(7) (limiting the scope of discovery to only seeking relevant information). As such, Computer Economics, and the remaining cases Defendants cite (which adopt §2019.210 based solely on citation to Computer Economics) fail to address the operative inquiry.[1]

### 2. §2019.210 Does Not Impact The Outcome Of Litigation In Federal Court Or Create An Incentive For Forum Shopping

Refusing to implement California Code of Civil Procedure §2019.210 would have no impact on the outcome of this litigation. Even the cases cited by Defendants acknowledge that §2019.210 provides no information Defendants cannot otherwise obtain. Neothermia, 345 F.Supp.2d at 1044 (concluding based solely on Computer Economics that §2019.210 applies in federal court, but then noting that there was "no real dispute" because the plaintiff identified its trade secrets in discovery); see also VFD

---

[1] Nor is Defendants' contention that this Court has already adopted §2019.210 accurate. Two years after Neothermia Corp. v. Rubicor Medical, Inc., 345 F.Supp.2d 1042, 1044 (N.D. Cal. 2004) (cited by Defendants) accepted Computer Economics' holding without analysis, the Northern District reviewed both cases and, although it elected to use §2019.210 as a guide in evaluating the *plaintiff's* compliance with discovery requests – i.e. not as a procedural bar to plaintiffs' right to commence discovery, it expressly noted that this Court has not found §2019.210 to be mandatory in federal court. Advante Int'l Corp. v. Mintel Learning Techonology, 2006 WL 3371576, at *3, n.4 (N.D. Cal. 2006).

Consulting, Inc. v. 21st Services, 425 F.Supp.2d 1037, 1048 (N.D. Cal. 2006) (in response to defendants' argument that plaintiff had failed to comply with §2019.210, the court concluded that the issue was irrelevant since the plaintiff would have to identify its trade secrets before the summary judgment stage).

Indeed, on March 20, 2008 (one week after Plaintiffs propounded discovery), Defendants issued an interrogatory asking for the precise information they would obtain through the procedure of Code of Civil Procedure §2019.210 – the identification of Plaintiffs' trade secrets with reasonable particularity. See Exh. A. Thus, there is no reason to apply §2019.210 as a pre-condition to Plaintiffs' right to serve discovery in the first instance.

Nor would rejecting §2019.210 induce forum-shopping. Since the UTSA is a state law claim, plaintiffs seeking to pursue claims under the UTSA must have an independent basis to invoke federal jurisdiction. Thus, there is no reason to believe that the Court's ruling would, in and of itself, result in forum shopping.

### D. Applying §2019.210 Creates Inconsistency Across The Federal Courts

Applying California Code of Civil Procedure §2019.210 in federal cases would cause the UTSA to be litigated according to different procedures depending on the state in which the district court sits.

As noted, out of the 45 states (plus territories) that have adopted the UTSA, only California has instituted the procedure of §2019.210. Applying §2019.210 would cause federal courts to process trade secret claims inconsistently – which is what the Federal Rules were designed to prevent. Hanna, 380 U.S. at 472 ("One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings []"); Funcat, 2007 WL 273949, at *2 ("It is not within the discretion of the court to willy nilly apply bits and pieces of the discovery civil procedure codes of the various states, even the state in which the district court sits.") Indeed, such an outcome would open the proverbial "flood gates" to all types of arguments concerning state law procedures which ought to supplement or be grafted onto Rule 26.

### E. At A Minimum, Discovery Should Proceed With Respect To Claims Not Based On Allegations Of Trade Secret Misappropriation

Even if §2019.210 were to apply, it cannot bar all discovery here. In Advanced Modular Sputtering, the court barred discovery because it found that every cause of action hinged upon the allegation of trade secret misappropriation. 132 Cal. App. 4th at 834-35.

Here, Plaintiffs' UTSA claim (one of fifteen causes of action) is asserted against only nine defendants, and even as to all twenty-five defendants, Plaintiffs have asserted causes of action not factually dependent on Plaintiffs' UTSA claim. Thus, the vast majority of Plaintiffs' discovery requests seek facts which do not require any reference to Plaintiffs' trade secret claims, let alone a granular understanding of the claimed trade secrets. Regardless of §2019.210's applicability Defendants should be required to answer

virtually every discovery request without contemplating Plaintiffs' UTSA claim.  See e.g. First Amended Complaint, ¶¶ 28, 79, 92, 97-99, 102-105, 166-173 (asserting claims for breach of contract and breach of fiduciary duty arising, inter alia, out of thirteen defendants' failure to provide two weeks' notice of their resignations); see also Exh. B, Plaintiffs' discovery requests to EPIC, which call for, inter alia, the identification of any "data" taken or used by Plaintiffs, irrespective of whether such data constitutes Plaintiffs' "trade secrets," and requests calling for EPIC to identify what compensation it has paid to Plaintiffs' former employees.  As such, a blanket stay of discovery would be improper.

### F. Plaintiffs Offered A Compromise To Address EPIC's Concerns; EPIC Offered Up a Concession "§2019.210 By Another Name"

During the parties' meet and confer effort, Plaintiffs suggested that Defendants serve an interrogatory in the normal course of discovery requesting the information about Plaintiffs' claimed trade secrets.  In response, Defendants acknowledged their reliance on California Code of Civil Procedure §2019.210 is a "timing thing" (i.e. that they can obtain this information by propounding discovery but want it before Plaintiffs initiate their discovery) and that they were not "sure" whether any of Plaintiffs' discovery relates to non-trade secret claims.  After rejecting Plaintiffs' compromise, the following day, Defendants served just such an interrogatory.  See Exh. A.

Defendants' compromise is what Plaintiffs term "2019.210 By Another Name": if Plaintiffs agreed to respond to Defendants' interrogatory on shortened time (7 days), Defendants would waive all objections under §2019.210.  Plaintiffs rejected this proposal because (1) it still seeks to prevent Plaintiffs from conducting discovery until they comply with a procedural prerequisite beyond the requirements of Federal Rule 26, (2) Defendants are not truly compromising, but instead are invoking §2019.210 under the guise of a pure procedural discovery tactic (i.e. Defendants insist that even if §2019.210 does not require federal court plaintiffs to provide information before commencing discovery, Plaintiffs should be required to answer Defendants' questions before Defendants answer theirs), (3) in acknowledging their only concern is "timing," Defendants confirm that the issue is procedural, not substantive; and (4) Defendants waived any concerns regarding timing by waiting seven days after the date the parties stipulated discovery could begin to initiate discovery.

Plaintiffs then offered a counter-proposal: if Defendants would answer Plaintiffs' discovery without objecting on the grounds of California Code of Civil Procedure §2019.210, Plaintiffs would (1) answer in due course any FRCP-compliant interrogatory that asked Plaintiffs to identify their trade secrets, and (2) allow Defendants a period of time to revise and/or supplement their original discovery responses, with Plaintiffs refraining from negatively commenting on any changes related to trade secret responses made during that time period.  Defendants rejected this proposal without explanation.

Plaintiffs also asked if Defendants would agree that at least some discovery is not in dispute (i.e. the discovery not dependent on Plaintiffs' trade secret claims).  Defendants declined to do so, changing their position from the in-person meet and confer a few hours earlier ("we have not looked at that issue") to insisting without explanation (beyond

referencing <u>Advanced Modular Sputtering</u>) that all of the discovery propounded by Plaintiffs is factually related to Plaintiffs' trade secret claim.

## DEFENDANTS' ARGUMENT

"Trade secret claims are especially prone to discovery abuse since neither the court nor the defendant can delineate the scope of permissible discovery without an identification of plaintiff's alleged trade secrets."

*Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).

### Introduction

California Code of Civil Procedure § 2019.210 requires plaintiffs in trade secret cases to identify all claimed trade secrets before commencing discovery. Plaintiffs in this action have alleged a vast conspiracy among 25 defendants to misappropriate trade secrets. In addition, Plaintiffs recently served a barrage of discovery requests on Defendants without first identifying the trade secrets that Defendants allegedly misappropriated. Defendants therefore respectfully request that the Court require Plaintiffs (1) to identify the trade secrets at issue in compliance with § 2019.210 and/or the discretion of the Court under Rule 26, and (2) to relieve defendants of any obligation to respond to any discovery until after such identification has been made.

Every published decision from a California-based federal court considering the issue has held that section 2019.210, or its identical predecessor, section 2019(d), applies in federal proceedings. Indeed, the California law merely codifies a common-law rule prevailing in many other jurisdictions. Federal courts sitting in those states have routinely enforced the common-sense policy requiring disclosure of the plaintiff's trade secrets prior to commencement of discovery.

In addition, cases from this district also hold that regardless of whether section 2019.210 strictly applies, a plaintiff should be required to identify its claimed trade secrets at the outset to guide discovery. These cases hold that the identification requirement serves important policy goals, including assisting the Court in framing the appropriate scope of discovery, and preventing trade secret plaintiffs from filing meritless complaints. These goals are especially applicable here in light of the Court's denial of Plaintiff's motion for a temporary restraining order because Plaintiffs had not shown "a reasonable certainty of prevailing at trial[.]" (Order Denying TRO, at 5.)

### Procedural and Factual History of This Dispute

This case involves the type of litigation that the trade secret identification requirements codified in § 2019.210 were designed to address—cases "where a plaintiff's employee quits and opens a competing business," and then "files a lawsuit for trade secret misappropriation ... but does not identify the trade secrets." *Computer Econ., Inc.*, 50 F. Supp. 2d at 985. Plaintiffs, a large international insurance brokerage, allege in their complaint a vast conspiracy among 22 of its former employees and a regional start-up to steal its trade secrets and use them to compete unfairly. First Amended Complaint

("FAC") ¶ 1 ("This action stems from EPIC's illegal raiding of Plaintiffs' employees and the associated theft and use of Plaintiffs' confidential data to unfairly compete and steal millions of dollars of business."). The operative complaint alleges 14 causes of action associated with the claimed conspiracy—13 under California law and only one federal claim. Each claim, including the federal claim, relies directly or indirectly on their allegations of trade secret theft. *See* FAC ¶¶ 130, 137-41, 147, 156, 162-63, 167, 176, 181, 187, 192, 199, 205, 207, 210-21; *see also Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 830 (2005) (section 2019.210 "extends to any cause of action which relates to the trade secret").

The trade secret disclosure requirement is designed to avoid abuse, *i.e.* where a plaintiff files a meritless suit "for the purpose of harassing or even driving a competitor out of business by forcing [it] to spend large sums of money in defending unwarranted litigation." *Computer Econ., Inc.*, 50 F. Supp. 2d at 985. Plaintiffs thus far have yet to demonstrate that their allegations have merit. *See* Order Denying TRO, at 5 (citing case permitting court to deny TRO where the moving party "fails to show any chance of success on the merits[.]" Despite their inability to establish any chance of succeeding on the merits in this case, Plaintiffs served *more than one thousand* document requests the day discovery opened, including requests for disclosure of Defendants' own trade secrets. *See, e.g.*, Plaintiffs' RFPs to EPIC, Nos. 3, 4, 13, 18-25, 31, 34-38, 41.

Defendants requested Plaintiffs to make the required trade secret disclosure in mid-January. In subsequent correspondence, Plaintiffs indicated that they were unwilling to do so, arguing that the statute simply does not apply in federal court. During a recent in-person meet and confer, Plaintiffs took the position that they need not to make *any* identification under § 2019.210. Plaintiff also claim that Defendants may manufacture disputes over the adequacy of their identification, were they to make one, resulting in discovery delay in this case.

### Each Side's Proposed Compromise, Or Lack Thereof

To address Plaintiffs' stated concerns about potential discovery delays, Defendants offered to waive their rights under § 2019.210 if Plaintiffs would agree to provide, on an expedited basis, a substantive response to an interrogatory requesting the identification of their claimed trade secrets. This compromise would give Defendants the disclosure to which they are entitled before they are required to respond to discovery, without postponing the deadlines for Defendants' responses to discovery already served by Plaintiffs. Plaintiffs rejected this offer. Moreover, Plaintiffs' proposed "compromise"—that Defendants (1) serve an interrogatory requesting disclosure of the trade secret information, (2) respond to Plaintiffs' discovery without the benefit of any trade secret disclosure, and then (3) wait for a substantive response—is no compromise at all, as Defendants do not need Plaintiffs' permission to serve such an interrogatory.

## Argument

### All Published Decisions from Federal Courts in California Have Applied § 2019.210 to Federal Cases

Section 2019.210 requires a party bringing any action alleging the misappropriation of a trade secret under the California UTSA to "identify the trade secret with reasonable particularity" before commencing discovery "relating to the trade secret[.]" This provision applies not only to UTSA claims, but to claims in any *action* that alleges such a misappropriation, like the one at issue here. *Neothermia Corp.*, 345 F. Supp. 2d at 1043-44 (lawsuit alleging violation of nondisclosure agreement).

All published decisions from federal courts in California have found that the disclosure requirements in section 2019.210 apply to federal cases. *See Computer Econ., Inc.*, 50 F. Supp. 2d at 992; *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042 (N.D. Cal. 2004). The reasoning of these opinions is straightforward—the *Erie* doctrine compels section 2019.210's application. Under *Erie* and its progeny, this Court must apply a two-part test to determine whether this state law will apply to a state claim filed in a federal court. First, a court must ask whether the state law conflicts with an applicable Federal Rule of Civil Procedure. *Computer Economics, Inc.*, 50 F. Supp. 2d at 986 (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). If not, the court asks if failure to apply the state law would significantly affect the outcome of the case, or encourage litigants to file their actions in federal court. *Id.*

Thus, the issue is not whether a state rule is "procedural" rather than "substantive," but rather whether its application would be consistent with the Federal Rules. *Id.* ("In fact, placing a state rule within the substance-procedure continuum is generally unhelpful in determining whether *Erie* commands its application in federal court."); *see also United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (applying *Erie* test used in *Computer Economics* and determining that California's anti-SLAPP statute applied to diversity suit). Thus, "[u]nder this analysis, [federal] courts may apply ostensibly procedural rules" when they do not conflict with the Federal Rules, and "their non-application would create an incentive for plaintiffs to file actions in federal court." *Computer Econ., Inc.*, 50 F. Supp. 2d at 991.

In its well-reasoned opinion, the court in *Computer Economics* noted that section 2019.210 does not conflict with Federal Rule of Civil Procedure 26 or any other provision of the Federal Rules. *Id.* at 988-90 (finding no conflict with Rule 26(c)(7), 26(b)(1), 26(d), or Rule 26 generally). Instead, it complements those rules by giving the district court an additional tool to control discovery in trade secret cases under Rule 26(d). *Id.* at 990. That is, application of § 2019.210 adopts a discovery practice that—as explained in detail in the following section—district courts across the country use to ensure that trade secret plaintiffs do not obtain an unfair advantage in the discovery process. *E.g., Porous Media Corp.*, 187 F.R.D. at 600. Thus, the state law and the Federal Rules "can exist side by side ... each controlling its own intended sphere of

coverage without conflict." *See Lockheed*, 190 F.3d at 972 (holding that California's anti-SLAPP procedural practice applied in federal action) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)). Therefore, part one of the *Erie* test has been met.

Turning to the second part of the test, non-application of § 2019.210 in federal cases would encourage plaintiffs to bring their California trade secret claims in federal court. Indeed, "[a] plaintiff with a weak trade secret claim would have ample reason to choose federal court if it offered a chance to circumvent the requirements of [§ 2019.210]. Non-application of [§ 2019.210] would entitle a plaintiff to virtually unlimited discovery, enhancing its settlement leverage and allowing it to conform misappropriation claims to the evidence produced by the defendant in discovery." *Id.* at 992. This concern looms particularly large in this proceeding, where Plaintiffs have (1) brought thirteen of their fourteen claims under California law, (2) already received an unfavorable evaluation of the merits of their case from the Court, and (3) already served broad discovery requests. Refusing to apply § 2019.210 here would only "attract to federal court the unsupported trade secret lawsuits the statute was enacted to deter." *Id.*

Moreover, even applying the incorrect "procedural-versus-substantive" test leads to the same result. Because section 2019.210 applies only to actions alleging trade secret misappropriation, it "directly limit[s] a plaintiff's right to protect its trade secrets" and therefore resembles a substantive rule of decision. *See S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995) (Posner, J.) (noting that a "class of pretty easy cases ... is where the state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, is limited to a particular substantive area"); *Computer Econ., Inc.*, 50 F. Supp. 2d at 991-92 (citing same).

The sole case upon which Plaintiffs relied upon during meet-and-confer is an unpublished decision from the Eastern District of California, *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. S-06-0533 GEB GGH, 2007 WL 273949 (E.D. Cal. Jan. 29, 2007), *followed by Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst.*, No. CIV S-07-1588 WBS EFB, 2008 WL 282374, at *2 (E.D. Cal. Jan 31, 2008). *Funcat*'s attempt to distinguish *Computer Economics* suffers from two fundamental flaws. First, it incorrectly applies the discredited procedural-versus-substantive litmus test to determine the *Erie* question. *Funcat*, 2007 WL 273949, at *3. Second, it relies upon a false conflict between § 2019.210 and Rule 26, based on the grounds that Rule 26 requires discovery to go forward on the day it opens, unfettered by any identification requirements in trade secret cases. *Id.* at *2-3. Further still, *Funcat* elides the point that Rule 26(d) provides district courts with discretion to stay discovery until a trade secret plaintiff identifies its trade secrets, as discussed below.

### § 2019.210 Codifies a Widespread Disclosure Requirement Prevalent in Other States and Utilized By Federal Courts Across the Nation

Section 2019.210 is not a novelty limited to California. Rather, "[o]rdering the listing of trade secrets at the outset of the litigation is a common requirement" in federal litigation of state trade secret claims. *Porous Media Corp. v. Midland Brake Inc.*, 187

F.R.D. 598, 600 (D. Minn. 1999) (citing *Computer Econ., Inc.*). This is because the initial identification of trade secrets serves four important purposes: (1) "promot[ing] well-investigated claims and dissuad[ing] the filing of meritless trade secret complaints;" (2) "prevent[ing] plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets;" (3) assist[ing] the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope;" and (4) enabl[ing] defendants to form complete and well-reasoned defenses[.]" *Computer Econ., Inc.*, 50 F. Supp. 2d at 985.

In Delaware, for example, "[w]here ... a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets." *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) (applying *Engelhard* to federal lawsuit). Likewise, district courts sitting in Illinois, Florida, Minnesota, Michigan, and New York apply similar rules:

- *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (adopting Delaware standard);
- *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1322, 1324 (S.D. Fla. 2001) ("Although Florida has not enacted a statute like California's that compels disclosure of trade secrets, the same result is achieved under Florida's case law");
- *Porous Media Corp.*, 187 F.R.D. at 600 ("The orderly disposition of cases involving claims of misappropriation of trade secrets cannot permit a situation where the details concerning the claimed trade secrets are not disclosed at an early date in the litigation");
- *Dura Global Techs., Inc. v. Magna Donnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *5 (E.D. Mich. Dec. 6, 2007) (staying discovery until "Plaintiffs identif[ied] the alleged misappropriated trade secrets with reasonable particularity");
- *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it. The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are").

**Regardless of Whether § 2019.210 Strictly Applies, Plaintiffs Should be Required to Identify Their Claimed Trade Secrets as a Matter of Sound Discovery Practice**

When faced with the same question presented here, this Court has found, without needing to reach the issue of whether § 2019.210 strictly applies in federal court, that the law should act as "an appropriate guide in the absence of specific provisions in the federal rules governing trade secret discovery." *Advante Int'l Corp. v. Mintel Learning Tech.*, No. C-05-01022 JW (RS), 2006 WL 3371576, at *3 n.4 (N.D. Cal. Nov. 21, 2006);

*see also Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co., Ltd.*, No. C 07-5248 JW PVT, 2008 WL 183520, at *1 & n.2 (N.D. Cal. Jan 18, 2008). Thus, even if the Court were to determine that § 2019.210 does not strictly apply here, Defendants respectfully request the Court to order Plaintiffs to identify their claimed trade secrets before they may commence discovery.